# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PHILIP BEVERLY and ROBERT BIONAZ, | )<br>) |
| Plaintiffs, | ) Case No. 14 C 4970 |
| v. | ) Judge Joan B. Gottschall |
| WAYNE WATSON, PATRICK CAGE, and JANELLE CARTER, | )<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The defendants' motion to dismiss for lack of subject matter jurisdiction [36] is denied.

### I. BACKGROUND

Plaintiffs Phillip Beverly and Robert Bionaz are two professors at Chicago State University ("CSU"). The defendants are Wayne Watson (CSU's President), Patrick Cage (CSU's Vice President of Labor and Legal Affairs and CSU's General Counsel), and Janelle Carter (CSU's Associate General Counsel).[1] All three defendants were sued in their official and individual capacities.

The plaintiffs are regular contributors to a blog called *CSU Faculty Voice* that criticizes the administration at CSU (www.csufacultyvoice.blogspot.com). According to the plaintiffs, the *CSU Faculty Voice* blog is not hosted on CSU's servers. The plaintiffs assert that the defendants violated their First Amendment rights by trying to shut down the blog and adopting a "Cyberbullying Policy" that prohibits electronic communications that may have an "adverse impact on the work environment of a CSU faculty member or employee." (Complaint at ¶ 2.)

---

[1] The court previously dismissed the claims against CSU's Board of Trustees.

The Cyberbullying Policy prohibits "deliberate or repeated conduct" that "harasses [or] intimidates an individual . . . or has the effect of substantially disrupting the individual's daily life via the use of electronic information and communication devices; [] the use of information and communication technologies to support a deliberate, repeated, and hostile course of conduct that is intended to harm others; or [] intentional and repeated harm through the use of computers, cell phones, and electronic devices." (Dkt. 1, Page ID# 42.) The Cyberbullying Policy applies to "electronic speech," including "[e]xpressive conduct" in any form that is conveyed via any means (e.g., tweets, blog postings, and text messages), regardless of whether it is associated with CSU computers.

The plaintiffs also challenge CSU's "Computer Usage Policy," which requires electronic communications, "including websites and blog posts on the university server," to "adhere to the University standards of conduct which prohibit any communication which tends to embarrass or humiliate any member of the community." (*Id*. at ¶ 24.) In addition, the plaintiffs allege that the defendants wrongly asserted trademark claims relating to the *CSU Faculty Voice* blog to chill the plaintiffs' First Amendment expression. Specifically, the plaintiffs allege that the defendants sought to prevent the plaintiffs from speaking by claiming, without basis, that the use of CSU's name and trademarks on the blog "caused confusion, diminished the University's brand, and implied CSU's endorsement of the blog's commentary." (*Id*. at ¶ 25.)

The complaint also contains a few broadly worded allegations about retaliation against plaintiff Beverly based on his criticism of CSU and its administration. (*Id*. at ¶¶ 37-40.) Specifically, Beverly contends that CSU canceled his reservation for a room where he planned to hold a meeting to discuss the repression of free speech at CSU. Beverly moved the meeting to a

classroom space and some of the students from his public management class attended. CSU initiated disciplinary hearings against Beverly based on his holding of class in an unauthorized location. At an initial hearing on the disciplinary charges, CSU alleged that Beverly violated its policy that forbids professors from imposing their personal beliefs on students. It appears that the disciplinary charges against Beverly remain pending.

The complaint contains four counts:

1. Count I – "Facial challenge to violation of right to free speech under the plaintiffs' First and Fourteenth Amendment rights (42 U.S.C. § 1983) – (Computer Usage Policy) (all defendants)"

2. Count II – "Violation of right to free speech under the plaintiffs' First and Fourteenth Amendment Rights (42 U.S.C. § 1983) – (Cyberbullying Policy) (all defendants)"

3. Count III – "As-applied Violation of plaintiffs' right to free speech under the First and Fourteenth Amendments (42 U.S.C. § 1983) (individual defendants)." This count challenges the individual defendants' alleged efforts to shut down the *CSU Faculty Voice* blog or "sanction" the plaintiffs for views expressed in the blog.

4. Count IV – The plaintiffs request declaratory judgment based on the prior three counts.

The defendants have filed a motion to dismiss for lack of subject matter jurisdiction.[2] According to the defendants, they have never enforced the Computer Usage Policy or the Cyberbullying Policy against the plaintiffs and there is no reasonable probability that these policies will ever be enforced against the plaintiffs. In the plaintiffs' response to the motion to

---

[2] The defendants state that the "only issue" presently before the court is whether the plaintiffs have standing to pursue their claims. (Dkt. 49 at Page ID# 348.) They nevertheless also briefly argue that the plaintiffs' complaint fails to state a claim for retaliation. (*Id*. at Page ID# 347-48.) This argument should have been framed as a motion to dismiss pursuant to Rule 12(b)(6) and analyzed under the standards applicable to Rule 12(b)(6) motions. The court declines to reach it because it is buried in a motion to dismiss for lack of subject matter jurisdiction and is entangled in arguments about standing.

dismiss, as well as their motion for a preliminary injunction, they allege that contrary to the defendants' contention that there is no present case or controversy, the defendants attempted to shut down the *CSU Faculty Voice* blog and engaged in retaliation based on their protected speech. In addition, the plaintiffs assert that the defendants' activities have chilled their expressive activities.

## II. LEGAL STANDARD

When considering a motion to dismiss for lack of subject matter jurisdiction, the court accepts the complaint's well pleaded factual allegations as true and draws all reasonable inferences in the plaintiffs' favor. *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014) (citing *Iddir v. I.N.S.*, 301 F.3d 492, 496 (7th Cir. 2002)). Plaintiffs facing a 12(b)(1) motion to dismiss, however, bear the burden of establishing that jurisdiction is proper. *Id*. Because the defendants have challenged facial jurisdiction, the court is limited to the allegations in the plaintiffs' complaint. *See Leveski v. ITT Educational Serv., Inc.*, 719 F.3d 818, 827 (7th Cir. 2013) (holding that "because [the defendant] raised a factual (instead of a facial) challenge to jurisdiction, we are not bound to accept as true the allegations of the complaint which tend to establish jurisdiction") (internal quotations omitted); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009) ("Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction").

## III. ANALYSIS

The defendants argue that this case must be dismissed because the plaintiffs lack standing to pursue their claims. Relatedly, the defendants argue that the plaintiffs' claims are not ripe.

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the United States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "As a jurisdictional requirement, the plaintiff bears the burden of establishing standing." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). To establish standing, a plaintiff must prove that: (1) he suffered a concrete and particularized injury that is actual or imminent; (2) the injury is fairly traceable to the defendant's actions; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61.

In turn, ripeness requires "an actual dispute between parties with adverse legal interests." *See Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 999 (7th Cir. 2011); *see also Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotations omitted) (holding that to determine if there is an actual controversy between the parties, the court must consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."). "The difference between an abstract question calling for an advisory opinion and a ripe 'case or controversy' is one of degree, not discernible by any precise test." *Wisconsin. Envtl. Decade, Inc. v. State Bar of Wisconsin*, 747 F.2d 407, 410 (7th Cir. 1984).

A. **Have the Plaintiffs Sufficiently Alleged an Actual or Imminent Injury That is Concrete and Particularized Inquiry (Standing) and the Existence of an Actual Dispute (Ripeness)?**

The court begins by considering if the plaintiffs have alleged an actual or imminent injury that is concrete and particularized (standing). This inquiry overlaps with the requirement that a plaintiff allege sufficient facts to show that there is an actual dispute (ripeness). The

-5-

court's consideration of these standards starts and ends with the plaintiffs' allegations about the cease and desist letter sent to Beverly regarding the *CSU Faculty Voice* blog.[3]

According to the plaintiffs, the defendants collectively attempted to chill their First Amendment right to free speech by sending a cease and desist letter demanding that they shut down the blog. In that letter, in addition to assertions about the use of CSU's trademarks, Cage states that "the lack of civility and professionalism expressed on the blog violates the University's values and policies requiring civility and professionalism." (Dkt. 1-1 at Page ID# 23.) The plaintiffs stress that this letter is dated one business day after a post appeared on the blog contending that a senior CSU administrator (Angela Henderson, CSU's Interim Provost and Senior Vice President for Academic Affairs) had partially falsified her resume. The plaintiffs allege that they fear discipline under the Computer Usage Policy for publishing the CSU Faculty Voice, even though that the blog is not hosted in CSU's servers. They also allege that the Computer Usage Policy is improperly vague and overbroad. Finally, they allege that they fear discipline under CSU's Cyberbullying Policy.

In contrast, the defendants contend that the reference to civility in the cease and desist letter does not show that CSU threatened the plaintiffs with legal action based on the Computer Usage or Cyberbullying Policies. The court disagrees. At this stage in the proceedings, the court must draw all reasonable inferences in the plaintiffs' favor. *Ctr. for Dermatology and Skin Cancer, Ltd.*, 770 F.3d at 588-89. The references to civility do not appear to be related to the claims of trademark infringement raised elsewhere in the cease and desist letter. It is eminently

---

[3] There are a total of three letters from the defendants regarding the blog. For present purposes, the court will confine its discussion to the first letter from Cage.

reasonable to read the letter as a demand to shut down the *CSU Faculty Voice* blog based on its alleged failure to meet CSU on-line civility standards. It is also eminently reasonable to conclude that those civility standards are the ones memorialized in CSU's Computer Usage Policy, which requires electronic communications to "adhere to the University standards of conduct which prohibit any communication which tends to embarrass or humiliate any member of the community." (Dkt. 1 at ¶ 24.) The same goes for the Cyberbullying Policy, which could be read as prohibiting a series of negative blog posts.

The defendants assert that the inference that they were relying on the Computer Usage or Cyberbullying Policies is obviously wrong because the plaintiffs specifically allege that the blog is not hosted on a CSU server.[4] According to the allegations in the complaint, however, CSU's Computer Usage Policy states that it "includ[es] websites and blog posts on the university server." (*Id*.; Dkt. 1-1 at Page ID# 26.) It is not explicitly limited to Internet websites and blog posts hosted on CSU's server. That is a possible interpretation of the policy but the court cannot make findings of fact at this stage of the proceedings. Similarly, the Cyberbullying Policy is not limited to communications made using CSU's computer equipment. Thus, the allegation that the blog is hosted on a non-CSU server does not negate the inference that the defendants were threatening the plaintiffs based on the Computer Usage and Cyberbullying Policies.

Discovery may belie the plaintiffs' allegations. At this stage in the proceedings, however, the court must construe the plaintiffs' allegations in their favor. It thus declines to ignore the fact that a letter ostensibly about alleged trademark violations contains assertions

---

[4] With respect to the parties' arguments about the meaning of the cease and desist letter, the court notes that if the defendants, in fact, have no intention of ever enforcing the Computer Usage or Cyberbullying Policies against the plaintiffs, this case is ripe for settlement discussions.

about the tone and content of the *CSU Faculty Voice* blog. Accordingly, the court finds that the plaintiffs' allegations satisfy the actual or imminent injury requirement for both standing and ripeness. This means that the plaintiffs have satisfied the single-element test for ripeness. *See Kawasaki Heavy Indus., Ltd.*, 660 F.3d at 999. The court turns to the remaining two elements necessary to establish standing: a traceable injury and redressability.

**B.      Traceable Injury (Standing)**

The defendants argue that the plaintiffs' allegations fail to link their claimed injuries to the defendants' actions. The defendants' lead example is their claim that the cease and desist letter did not rest, at least in part, on the Computer Usage or Cyberbullying Policies because the letter did not explicitly refer to those policies. The court rejects this argument, for the reasons explained above.

The defendants also claim that the plaintiffs are merely speculating that the cease and desist letter was based on CSU's Computer Usage and Cyberbullying Policies and, therefore, cannot meet the traceable injury requirement. It is true that a plaintiff's speculation that a defendant injured him is insufficient. *See*, *e.g.*, *Area Transp., Inc. v. Ettinger*, 219 F.3d 671, 673 (7th Cir. 2000). The so-called speculation here, however, is the plaintiffs' allegation that their First Amendment rights were chilled due to CSU's Computer Usage and Cyberbullying Policies. According to the defendants, this claim has no factual basis because they never threatened to enforce CSU's Computer Usage and Cyberbullying Policies. As discussed above, since the court must construe the plaintiffs' allegations liberally, the court cannot accept this position at the motion to dismiss stage.

The defendants also allege that the plaintiffs' claim that their First Amendment rights were chilled is speculative because the plaintiffs do not specify what expressive speech they have been prevented from making. "A 'subjective chill' [*i.e.*, a subjective apprehension] on one's exercise of First Amendment rights is not, by itself, sufficient to support standing." *Zamecnik v. Indian Prairie School Dist. No. 207 Bd. of Educ.*, No. 07 C 1586, 2009 WL 805654 (N.D. Ill. Mar. 24, 2009) (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)). "Instead, a 'specific present objective harm or a threat of specific future harm' is necessary to support standing." *Id.* (quoting *Laird*, 408 U.S. at 14). Here, the general tenor of the speech at issue is not speculative: the plaintiffs clearly wish to continue to criticize CSU's administration as they have done in the past. *Cf. id.* at *6 (finding that the plaintiff did not have standing to pursue claims based on speech when the record did not show what conduct the plaintiff wished to engage in). Once the court accepts the plaintiffs' reading of the letter (which it must do given this case's procedural posture), the link between the defendants' actions and the alleged chilling of the plaintiffs' First Amendment rights is not speculative.

## C.     Redressability (Standing)

With respect to redressability, the defendants argue that if the court rules in the plaintiffs' favor, it "would have no impact on the trademark issues about which [p]laintiffs complain in this lawsuit." (Dkt. 49 at Page ID# 356). The plaintiffs, however, referred to the defendants' assertions about trademark infringement to provide context for their claims. They do not seek any relief regarding trademark claims, such as a declaratory judgment finding that their use of CSU's marks was proper. Instead, they seek relief based on a variety of First Amendment theories. The defendants' arguments about redressability are, therefore, unconvincing.

## IV. CONCLUSION

For the above reasons, the defendants' motion to dismiss pursuant to Rule 12(b)(1) [36] is denied. The parties shall appear on January 14, 2015, as previously scheduled, to discuss scheduling for the plaintiffs' motion for a preliminary injunction [42]. They shall also be prepared to discuss whether settlement discussions before this court or the magistrate judge would be helpful.

Date: January 13, 2015

/s/
Joan B. Gottschall
United States District Judge