**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PHILLIP BEVERLY and ROBERT BIONAZ, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 14 C 4970 ) |
| WAYNE D. WATSON, et al., | ) Judge Joan B. Gottschall ) Magistrate Judge Finnegan ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Phillip Beverly and Robert Bionaz are associate professors at Chicago State University ("CSU"). They helped to found, and frequently contribute to, a blog titled *CSU Faculty Voice*, which aims to expose perceived mismanagement at the university. In this lawsuit, Plaintiffs charge the CSU Board of Trustees, as well as President Wayne D. Watson, Vice President of Labor and Legal Affairs and General Counsel Patrick Cage, and Associate General Counsel Janelle Carter, with trying to silence Plaintiffs' criticism of the CSU administration in violation of their First and Fourteenth Amendment Rights under 42 U.S.C. § 1983. Plaintiffs seek a declaration that CSU's Computer Usage and Cyberbullying Policies are unconstitutional, a permanent injunction prohibiting Defendants from further censoring Plaintiffs' lawful speech, and monetary damages.

In this motion, Plaintiffs object that Defendants have improperly invoked the attorney-client privilege and/or the work product doctrine to justify withholding some 20 documents responsive to their discovery requests. These include two internal

communications among CSU's in-house counsel (IRE000727 and IRE000728), and several draft documents prepared or reviewed by in-house counsel (IRE000805, IRE000895, IRE001178, IRE001190, IRE001342, IRE001344, IRE003076, IRE003080, IRE003081, IRE003082, IRE003085, IRE003089, IRE000951, IRE001157, IRE001606, IRE001608, IRE003126, and IRE003162).

Plaintiffs express suspicion of what they characterize as Defendants' "shifting justifications" for the privilege designations, and argue that Defendants have "failed to adequately support their claims for withholding" the cited materials. (Doc. 101, at 2). To resolve the parties' dispute, this Court has conducted an *in camera* review of the documents in question. *See, e.g., Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 405 (1976) ("[A]n *in camera* review of the documents is a relatively costless and eminently worthwhile method to insure that the balance between petitioners' claims of . . . privilege and plaintiffs' asserted need for the documents is correctly struck."). Based on that review, the Court finds that all of the documents are protected from disclosure by either the work-product doctrine or the attorney-client privilege. Plaintiffs' motion to compel is therefore denied.

## DISCUSSION

**A.     Legal Framework**

The attorney-client privilege protects "communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2009). The privilege is intended to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the

2

observance of law and the administration of justice." *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 414 (N.D. Ill. 2006). Though the privilege generally applies only to communications made by the client, "statements made by the lawyer to the client will be protected where those communications rest on confidential information obtained from the client, or where those communications would reveal the substance of a confidential communication by the client." *Id.* at 414-15.

Work product protection of documents sought during pretrial discovery is governed by Federal Rule of Civil Procedure 26(b)(3).[1] Under this rule, documents prepared "in anticipation of litigation for the purpose of analyzing and preparing a client's case" are protected from disclosure. *Sandra T.E.*, 600 F.3d at 618 (citing FED. R. CIV. P. 26(b)(3)). The doctrine seeks to prevent a party from "invading the privacy of an attorney's course of preparation [which] is so well recognized and so essential to an orderly working of our system of legal procedure." *Hollinger Int'l Inc. v. Hollinger Int'l*, 230 F.R.D. 508, 511 (N.D. Ill. 2005) (quoting *Hickman v. Taylor*, 329 U.S. 495, 512 (1947)).

The protection afforded work product may be overcome if a party shows that it has a "substantial need for the materials" and "cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A)(ii). But even if a court orders discovery of work product based on such a showing, the court "must

---

[1] Since Rule 26(b)(3) applies only to pretrial discovery of documents and tangible things, when work product protection is sought during trial or as to oral statements, courts must apply the principles articulated in *Hickman v. Taylor*, 329 U.S. 495, 512 (1947). 2 EDNA SELAN EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE 795 (5th ed. 2007). While that case focused on the protection of an attorney's work product, Rule 26(b)(3) protects materials prepared by a party's representative other than the party's attorney. *Id. See also* FED. R. CIV. P. 26(b)(3)(A) (protecting work product "by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).").

protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." F~ED~. R. C~IV~. P. 26(b)(3)(B). In other words, a "far stronger showing" is necessary to discover opinion work product than "ordinary" or "fact" work product consisting of "raw factual information." *See Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 616 (N.D. Ill. 2000). As with the attorney-client privilege, the party asserting the work product doctrine bears the burden of showing that it applies. *Itex, Inc. v. Workrite Uniform Co.*, No. 08 C 1224, 2011 WL 1224920, at *1 (N.D. Ill. Mar. 31, 2011).

**B.    Analysis**

Plaintiffs argue that Defendants' have not met their burden of demonstrating that the 20 withheld documents are in fact privileged. The Court considers each in turn.

### 1.    Emails Relating to Trademark/Tradename Infringement Claims

On November 11, 2013, Defendant Cage (as Vice President and General Counsel of CSU) sent Plaintiff Beverly (as Publisher and Editor of the *Faculty Voice* blog) a Cease and Desist letter accusing him of trademark infringement and trademark dilution in connection with the blog. Plaintiffs' prior counsel responded to that letter on November 27, 2013 denying any wrongdoing and refusing to disable the blog. (Doc. 1-1, at 10-12). This prompted counsel for CSU to send a letter dated January 3, 2014 "expressly reserv[ing] all of [CSU's] rights," including the right to pursue litigation. (Doc. 1-1, at 14-15).

Defendants have asserted protection under the work-product doctrine and attorney-client privilege over an email string dated February 20, 2014 between two of CSU's in-house attorneys, Defendant Carter and Robin Hawkins. Defendants state that

4

the emails are a response to "concerns arising from Plaintiff's improper use of CSU trademarks/trade names and the potential for litigation related to the same." (Doc. 114, at 3). Since nothing in the emails reflects the lawyers' mental processes or opinions, the Court must determine whether the emails qualify as "fact" work product. The threshold question in that regard is "whether the material sought to be protected from discovery was prepared in anticipation of litigation." *Coltec Indus., Inc. v. American Motorists Ins. Co.*, 197 F.R.D. 368, 371 (N.D. Ill. 2000).

As noted, Defendants have affirmed that the emails were prepared in anticipation of a potential trademark lawsuit. Plaintiffs disagree, stressing that the emails are dated "over four months before plaintiffs filed suit." (Doc. 101, at 4). Yet it is well-established that the work product doctrine may apply to documents created before litigation commences, or even where no litigation ultimately ensues. *Caremark*, 195 F.R.D. at 614. The test is whether "the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1118-19 (7th Cir. 1983).

Here, Defendants certainly anticipated litigation with Plaintiffs in January 2014, as evidenced by their counsel's letter in that regard. The Court accepts Defendants' representation that the February 2014 emails were drafted in connection with that potential litigation and therefore constitute protected work product. Plaintiffs have not demonstrated that they have a "substantial need" for the documents or that they would suffer undue hardship in procuring the information some other way. The motion to compel production of IRE000727-728 is denied.

**2.     Draft Documents Prepared or Reviewed by In-House Counsel**

The remaining withheld documents are drafts of letters and memos prepared for CSU administrators. All of these drafts were either written or reviewed by in-house counsel to assess legal issues. For example, IRE000805 is a March 3, 2014 email from in-house counsel Patrick Cage to President Watson's Executive Assistant Binta Chauncey attaching a draft letter with Cage's proposed edits. This is an attorney-client communication and need not be produced. The same is true of the following documents:

• IRE000895 – draft letter that in-house counsel Robin M. Hawkins sent to Chauncey and Cage on March 10, 2014 with Hawkins' suggested revisions.

• IRE001178 – draft letter prepared by in-house counsel Maria Mazza for a CSU administrator, which she sent to Cage on April 29, 2014.

• IRE001190 – draft letter Hawkins sent to both David Kanis, Interim Dean of the College of Arts and Sciences, and Cage on May 6, 2015, with Hawkins' proposed revisions.

• IRE001342 – draft memo Hawkins sent to Provost Angela Henderson, Chief Ethics Officer Bernetta Bush, Esq., and Cage on June 18, 2014, with Hawkins' proposed revisions.

• IRE001344 – draft letter Kanis sent to Hawkins on June 2, 2014 (who then forwarded it to Cage on June 18, 2014) seeking Hawkins' legal advice.

• IRE003076 – draft letter Chauncey sent to Cage and President Watson on August 29, 2014, reflecting Cage's suggested revisions.

- IRE003080 – draft letter Chauncey sent on August 29, 2014 to Cage (who then forwarded it to Mazza on September 2, 2014) for legal review.
- IRE003081 and IRE003082 – an email Cage sent himself on September 2, 2014, attaching another copy of the draft letter at issue in IRE003080.
- IRE003085 – draft letter Chauncey sent to Cage for review on September 2, 2014, copied to Bush, Henderson, President Watson, and Director of Intergovernmental Affairs Farah Muscadin, Esq., incorporating changes Cage recommended.
- IRE003089 – draft letter Chauncey sent to Page on September 4, 2014, copied to Muscadin and President Watson, for Page's review.
- IRE000951 – draft memo President Watson sent to Cage in March 2014 for legal review.
- IRE001157 – draft memo Kanis sent to Hawkins on Aril 25, 2014 for legal review.
- IRE001606 and IRE001607 – email from Mazza to Cage attaching draft letters Mazza prepared for CSU administrators.
- IRE003126 – emails between Mazza, Cage, and Cage's Executive Assistant Veronica Scates regarding draft documents prepared by the Legal Department for a CSU administrator.
- IRE003162 – draft letter prepared by CSU's Legal Department for an administrator, and sent from Cage to his Executive Assistant on November 12, 2014.

Plaintiffs do not raise any substantive challenges to Defendants' assertion of the attorney-client privilege. Instead, they object to the fact that Defendants initially asserted only work-product protection over several of these documents, then later raised the attorney-client privilege in response to letters Plaintiffs sent challenging the

work-product designation. (Doc. 101, at 4). Plaintiffs find the modifications suspicious and believe that "defendants' shifting privilege claims were contrived to impermissibly continue withholding documents that should have been produced." (Doc. 115, at 1). Of course, Plaintiffs themselves invited the modifications by asking Defendants to take another look at their privilege designations, and Federal Rule of Civil Procedure 26(e) imposes an affirmative *duty* to timely supplement or correct any disclosures where a "party learns that in some material respect the disclosure or response is incomplete or incorrect."

In any event, the Court is satisfied based on its *in camera* review that the documents are protected by the attorney-client privilege. The Court also finds no merit to Plaintiffs' speculation that the documents may contain "non-party witness statements" or results of an "internal investigation" that "may carry great probative value on contested issues." (Doc. 101, at 5; Doc. 115, at 3). Plaintiffs' motion to compel the draft letters and memos, and the associated emails described above is denied.

## **CONCLUSION**

For the reasons stated above, Plaintiffs' Motion to Compel (Doc. 101) is denied.

ENTER:

Dated: August 28, 2015

*Sheila Finnegan*
Sheila Finnegan

8