## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

PHILLIP BEVERLY, *et al.*,                )
                                          )
                Plaintiffs,          )          Case No. 1:14-CV-04970
                                          )
      v.                                )          Judge Joan B. Gottschall
                                          )
WAYNE D. WATSON, *et al.*,                )          Magistrate Judge Sheila Finnegan
                                          )
                Defendants.          )

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

ROBERT CORN-REVERE
  (*pro hac vice*)
bobcornrevere@dwt.com
RONALD G. LONDON
  (*pro hac vice*)
ronnielondon@dwt.com
LISA B. ZYCHERMAN
  (*pro hac vice*)
lisazycherman@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
Telephone: (202) 973-4200

JESSICA TOVROV
GOODMAN TOVROV HARDY & JOHNSON LLC
105 West Madison Street, Suite 1500
Chicago, IL 60602
Telephone: (312) 252-7362
jessica@tovrovlaw.com

Attorneys for Plaintiffs
Phillip Beverly and Robert Bionaz

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

I.      BACKGROUND ................................................................................................. 2

II.     ARGUMENT ...................................................................................................... 6

        A.      The Provisions of CSU's Computer Usage Policy Governing the Content
                of Communications, and its Cyberbullying Policy, are Unconstitutionally
                Overbroad and Vague ............................................................................. 7

        B.      Injunctive and Declaratory Relief are Necessary to Prevent Further
                Constitutional Violations .................................................................... 13

III.    CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ACLU of Ill. v. Alvarez,*
   679 F.3d 583 (7th Cir. 2012) ..............................................................2, 15

*ACLU v. Ashcroft,*
   322 F.3d 240 (3d Cir. 2003), *aff'd*, 542 U.S. 656 (2004) .......................15

*Admiral Theater v. City of Chi.,*
   832 F. Supp. 1195 (N.D. Ill. 1993) ........................................................15

*Baggett v. Bullitt,*
   377 U.S. 360 (1964) ................................................................................12

*Bair v. Shippensberg Univ.,*
   280 F. Supp. 2d 357 (M.D. Pa. 2003) ...............................................10, 12

*Bell v. Keating,*
   697 F.3d 445 (7th Cir. 2012) .............................................................12, 13

*Beverly v. Watson,*
   78 F. Supp. 3d 717 (N.D. Ill. 2015) ......................................................14

*Brown v. Entm't Software Merchs. Ass'n,*
   564 U.S. 786 (2011) ..................................................................................7

*Bynum v. U.S. Capitol Police Bd.,*
   93 F. Supp. 2d 50 (D.D.C. 2000) ...........................................................12

*City of Houston v. Hill,*
   482 U.S. 451 (1987) ................................................................................12

*Cohen v. California,*
   403 U.S. 15 (1971) ....................................................................................9

*Cohen v. San Bernardino Valley College.,*
   92 F.3d 968 (9th Cir. 1996) ...............................................................10, 11

*Coll. Republicans at San Francisco State Univ. v. Reed,*
   523 F. Supp. 2d 1005 (N.D. Cal. 2007) .............................................11, 12

*Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.,*
   427 F.3d 1038 (7th Cir. 2005) ..................................................................1

*Ctr. for Individual Freedom v. Madigan*,
    697 F.3d 464 (7th Cir. 2012) ....................................................................................14

*Dambrot v. Cent. Mich. Univ.*,
    839 F. Supp. 477 (E.D. Mich. 1993), *aff'd*, 55 F.3d 1177 (6th Cir. 1995) ..............12

*Davis v. Monroe Cty. Bd. of Educ.*,
    526 U.S. 629 (1999) ...........................................................................................8, 10

*Déjà vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*,
    274 F.3d 377 (6th Cir. 2001) ...................................................................................15

*DeJohn v. Temple Univ.*,
    537 F.3d 301 (3d Cir. 2008)..........................................................................9, 10, 12

*Doe v. Univ. of Mich.*,
    721 F. Supp. 852 (E.D. Mich. 1989).................................................................11, 12

*Elrod v. Burns*,
    427 U.S. 347 (1976).............................................................................................2, 13

*Entm't Software Ass'n v. Chi. Transit Auth.*,
    696 F. Supp. 2d 934 (N.D. Ill. 2010) .......................................................................15

*Ezell v. City of Chi.*,
    651 F.3d 684 (7th Cir. 2011) ...................................................................................13

*Gooding v. Wilson*,
    405 U.S. 518 (1972)....................................................................................................9

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972)....................................................................................................7

*Healy v. James*,
    408 U.S. 169 (1972)....................................................................................................9

*Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*,
    778 F.3d 593 (7th Cir. 2015) .....................................................................................1

*Hynes v. Mayor of Oradell*,
    425 U.S. 610 (1976)....................................................................................................7

*Iota Xi Chapter of Sigma Chi Fraternity v. George Mason Univ.*,
    993 F.2d 386 (4th Cir. 1993) ...................................................................................12

*Koger v. Dart*,
    114 F. Supp. 3d 572 (N.D. Ill. 2015) .........................................................................1

*Lewis v. City of New Orleans*,
　415 U.S. 130 (1974)..........................................................................................9

*Lewis v. Wilson*,
　253 F.3d 1077 (8th Cir. 2001) .......................................................................12

*Massey v. Johnson*,
　457 F.3d 711 (7th Cir. 2006) .........................................................................12

*McCauley v. Univ. of V.I.*,
　618 F.3d 232 (3d Cir. 2010)......................................................................11, 12

*NAACP v. Button*,
　371 U.S. 415 (1963).........................................................................................7

*NAACP v. Hawthorne*,
　458 U.S. 886 (1982).........................................................................................8

*Nehra v. Rush Univ. Med. Ctr.*,
　2015 WL 6164958 (N.D. Ill. Oct. 20, 2015)....................................................1

*NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*,
　28 F.3d 572 (7th Cir. 1992) .......................................................................2, 15

*Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. No. 204*,
　523 F.3d 668 (7th Cir. 2008) .........................................................................14

*Papish v. Bd. of Curators of Univ. of Mo.*,
　410 U.S. 667 (1973).......................................................................................6, 9

*Penny Saver Publ'ns, Inc. v. Vill. of Hazel Crest*,
　905 F.2d 150 (7th Cir. 1990) ...........................................................................7

*Personal PAC v. McGuffage*,
　858 F. Supp. 2d 963 (N.D. Ill. 2012) .........................................................2, 13

*Procunier v. Martinez*,
　416 U.S. 396 (1974).........................................................................................9

*Reno v. ACLU*,
　521 U.S. 844 (1997).........................................................................................7

*Rosen v. Port of Portland*,
　641 F.2d 1243 (9th Cir. 1981) .........................................................................9

*Sammartano v. First Jud. Dist. Ct.*,
　303 F.3d 959 (9th Cir. 2002) .........................................................................15

iv

*Saxe v. State Coll. Area Sch. Dist.*,
    240 F.3d 200 (3d Cir. 2001)...........................................................................6, 10, 11, 12

*Shelton v. Tucker*,
    364 U.S. 479 (1960)...................................................................................................9

*Srail v. Village of Lisle*,
    588 F.3d 940 (7th Cir. 2009) ....................................................................................1

*Teufel v. Princeton City Sch. Dist. Bd. of Educ.*,
    2013 WL 143808 (S.D. Ohio Jan. 11, 2013) .........................................................13

*Texas v. Johnson*,
    491 U.S. 397 (1989)...................................................................................................8

*United States v. Alvarez*,
    617 F.3d 1198 (9th Cir. 2010), *aff'd*, 132 S. Ct. 2537 (2012) ..................................7

*UWM Post, Inc. v. Bd. of Regents of Wis. Sys.*,
    774 F. Supp. 1163 (E.D. Wis. 1991).............................................................7, 11, 12

*Vill. of Schaumburg v. Citizens for a Better Env't*,
    444 U.S. 620 (1980).................................................................................................13

*Virginia v. Black*,
    538 U.S. 343 (2003)...................................................................................................8

*Wis. Right to Life, Inc. v. Barland*,
    751 F.3d 804 (7th Cir. 2014) ..................................................................................13

*Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*,
    313 F.3d 385 (7th Cir. 2002) ....................................................................................1

**Constitutional Provisions**

U.S. Const. amend I ........................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 56......................................................................................................1

Fed. R. Civ. P. 56.1...................................................................................................1

## INTRODUCTION

Plaintiffs Phillip Beverly and Robert Bionaz hereby move pursuant to Fed. R. Civ. P. 56 and LR 56.1 for summary judgment on Counts I and II of their Complaint that, respectively, the Computer Usage Policy and Electronic-Harassment/Cyberbullying Policy ("Cyberbullying Policy") at Chicago State University ("CSU") are facially unconstitutional under the First Amendment. This case was originally filed two years ago on July 1, 2014, and has been subject to inordinate delays. *See*, *e.g.*, Min. Entry, ECF 106 (Gottschall, J.). While much of the delay is attributable to disputes over discovery,[1] Plaintiffs believe that substantial judicial economies may be achieved by resolving those claims for which there can be no factual dispute.

There is no dispute of material fact regarding the facial challenges to the policies as being vague and overly broad and Plaintiffs are entitled to judgment as a matter of law, so summary judgment should enter for Plaintiffs on Counts I and II of the Complaint. *See* Fed. R. Civ. P. 56(a). *See also Koger v. Dart*, 114 F. Supp. 3d 572, 576 (N.D. Ill. 2015); *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009); *Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). Rule 56 expressly anticipates such partial summary judgment, which "can serve a useful brush-clearing function" by paring issues for trial and perhaps facilitating settling the rest of the case. *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 606 (7th Cir. 2015). *See Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*, 313 F.3d 385, 391 (7th Cir. 2002); *Nehra v. Rush Univ. Med. Ctr.*, 2015 WL 6164958, at *2 (N.D. Ill. Oct. 20, 2015).

---

[1] The record is replete with examples of discovery delays caused by Defendants' failures to timely respond to discovery requests. *See* Mot. Compel & Decl., ECF Nos. 101 & 102 (detailing multi-month delays in obtaining discovery from Defendants). Discovery was further delayed because document production from Non-Parties (who are also represented by counsel for Defendants) could only be sought after the close of discovery, in accordance with the Court's ruling, Min. Entry, ECF No. 124 (Finnegan, J.), and such production was untimely produced after the 30-day deadline imposed by the Federal Rules. *See* Order 3, ECF No. 162.

The facial challenges are ripe for decision on the existing record and a ruling would expedite the conclusion of this case.

Accordingly, this Court should enter a declaratory judgment that CSU's Computer Usage and Cyberbullying Policies violate the First Amendment because they are facially overbroad and vague such that they chill the exercise of free expression. The Court also should enter declaratory relief because it will clarify and settle disputed legal relationships between Plaintiffs and CSU, and afford relief from the uncertainty and controversy that created the issues in this case. *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th Cir. 1992). Once the merits are established, injunctive relief necessarily follows because loss of First Amendment rights "for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976), for which there is no adequate remedy at law. *Personal PAC v. McGuffage*, 858 F. Supp. 2d 963, 966-67, 969 (N.D. Ill. 2012); *see also id.* at 970-71. In a First Amendment case such as this, the balance of harms and public interest "collapse" into the merits and attendant irreparable harm. *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012).

## I.     BACKGROUND

Plaintiffs Phillip Beverly and Robert Bionaz are associate professors at CSU, where Professor Beverly has served as the President of the Faculty Senate, while Professor Bionaz is CSU Chapter President of UPI Local 4000, the faculty's collective bargaining unit. Pls.' Statement of Material Facts in Supp. of Mot. for Partial Summ. J. ("SMF") ¶¶ 1-2. In 2009, Plaintiffs founded the independent *CSU Faculty Voice* blog as a forum for exposing administrative malfeasance to the CSU community. The *CSU Faculty Voice* regularly engages in criticism of the CSU administration. *Id.* ¶ 1.

The facial constitutional challenges to CSU's Computer Usage and Cyberbullying policies arise out of a series of concerted and escalating actions by Defendants to suppress the *CSU Faculty Voice*'s reporting on and criticism of CSU officials, and to thereby attempt to silence and chill speech of undoubted public interest and importance.[2]  Plaintiffs' challenge to various as-applied violations of their First Amendment free speech rights are set forth in Count III of the Complaint and will proceed in due course.  But Plaintiffs' claims that CSU's Computer Usage Policy and Cyberbullying Policy violate the First Amendment should be decided without further delay based on the following undisputed facts.

### CSU's Computer Usage Policy

Since 2012, CSU has had a Computer Usage Policy that "provides guidelines for appropriate use by students, faculty and staff of computers, and other technological facilities" at CSU.  SMF ¶ 8 & Ex. A.  It requires users to "remain within the bounds of acceptable use as described in th[e Computer Usage Policy] and other University policies."  *Id*.  CSU specifies that "compliance with the computer use policy means" students, faculty and staff must "[r]espect the rights and sensibilities of others" and "the mission of the University in the larger community, and that "[a]ll University codes of conduct apply to information technology as well as to other forms of

---

[2] These censorial efforts have included (i) launching questionable trademark claims to demand the blog be disabled, (ii) contemplating a take-down request to the blog's web-hosting service, (iii) denial of use of campus facilities for an event focused on free speech abuses on campus, (iv) punishing Professor Beverly for his role in that event, (v) investigating Professor Bionaz under the Cyberbullying Policy for a "harassment" complaint based on a face-to-face exchange with CSU's Interim Public Relations Director, and (vi) fomenting false sexual harassment charges against Professor Beverly.  *See* Compl. ¶¶ 23-32, 34-39, 41-43 & Exs. A, C, D, ECF No. 1; Pls.' Mem. in Supp. Prelim. Inj. 1-4, ECF No. 44; Beverly Decl. ¶¶ 8, 11-20 & Exs. J-L & O-P, ECF No. 45; Bionaz Decl. ¶¶ 12-15, 18-21 & Ex. D, ECF No. 46; Pls.' Reply in Supp. Prelim. Inj. 8-12, ECF No. 67; Peebles Decl. *passim* & Ex. A, ECF No. 68.

communication and activity." *Id*. However, the Computer Usage Policy does not define either "respect" or the "larger community" for these purposes. *Id*. ¶ 9.

The Computer Usage Policy also requires all email and other electronic communications – including websites and blog posts on CSU servers – to "adhere to the University standards of conduct which prohibit any communication which tends to embarrass or humiliate any member of the community," as well as "avoiding distasteful, inflammatory, harassing or otherwise unacceptable comments." *Id*. ¶ 10 & Ex. A. Here, too, the Policy does not define its key terms such as "embarrass," "humiliate," or what is "harassing" or "otherwise unacceptable." *Id*. ¶ 11 & Ex. A. *See also id*. ¶ 13. Despite these failures to include critical definitions in purporting to "provide guidance," *supra* 3, users of CSU information systems must certify that they understand failure to comply with the rules, policies, and procedures may lead to disciplinary action, up to and including termination of University employment and possible criminal prosecution. *Id*. ¶ 12.

Defendants invoked such "standards of conduct" against Plaintiffs when, on November 11, 2013, Defendant CSU General Counsel Patrick Cage sent a cease-and-desist letter demanding that Plaintiffs "immediately disable [the] Chicago State University Faculty Voice Blog … no later than November 15, 2013." *Id*. ¶ 22 & Ex. E. In addition to advancing trademark-based claims, the letter claimed that the *CSU Faculty Voice* failed to adhere to the "high standards of civility and professionalism" that were characterized as "central tenants [sic] of the University's values" and that are "included in the standards of conduct required of faculty members." *Id*. An attorney engaged by Plaintiffs rejected this ultimatum, however. *Id*. ¶ 23.

### CSU's Cyberbullying Policy

Not long after the demand to disable the *CSU Faculty Voice*, Defendant CSU President Wayne Watson introduced a proposed "Cyberbullying Policy" to the Board of Trustees on

March 7, 2014, stating that, "the purpose of this policy is to protect members of the CSU family from bullying through any form of electronic communication." *Id.* ¶ 24. That proposal, adopted May 9, 2014, as CSU's Electronic-Harassment/Cyberbullying Policy, *id.*, applies to any and all "electronic speech," defined as all "expressive conduct (verbal, aural [sic], graphic, symbolic, or written) that is conveyed or otherwise communicated via electronic information and communication technology devices and/or media," including "e-mail messages, instant messaging, text messaging, cellular telephone communications, internet blog postings, social media site postings, internet chat room posts, and/or internet postings." *Id.* ¶ 26 & Ex. F. However, those at CSU charged with interpreting and enforcing it have stated these are not the outer bounds of conduct that the Policy reaches. *Id.* ¶ 33. Whatever may be the full extent of its reach, the Cyberbullying Policy prohibits:

> deliberate or repeated conduct [that] harasses [or] intimidates an individual … or has the effect of substantially disrupting the individual's daily life via the use of electronic information and communication devices;
>
> the use of information and communication technologies to support a deliberate, repeated, and hostile course of conduct that is intended to harm others; [and]
>
> intentional and repeated harm inflicted through the use of computers, cell phones, and electronic devices.

*Id.* ¶ 27 & Ex. F.

The Cyberbullying Policy does not define the term "harass" or characterize the referenced harassment (as a requirement, or otherwise) as having to be "severe," "pervasive," and/or "objectively offensive," *id.* ¶ 28 & Ex. F, nor does it define the term "harm" as used in the above-quoted prohibitions. *Id.* ¶ 29 & Ex. F.[3] The policy is enforced through a "Complaint

---

[3] Further, as used in the Cyberbullying Policy, the term "repeated" encompasses any "conduct … engaged in on more than one occasion as well as conduct that has a continuing manifestation beyond the time of the conduct itself, including, without limitation, internet blog

Procedures" section stating (among other things) that: "If disciplinary action is required" as a result of a finding of violation, "procedures under the relevant collective bargaining agreements, Board of Trustees Regulations, State Universities Civil Service Status and Rules, or University Student Conduct Code will be followed." *Id.* ¶ 31.

Plaintiffs found the Cyberbullying Policy applied to them almost immediately. Within days of adoption, a CSU administrator, then-Interim Public Relations Director Thomas Wogan, filed a "Discrimination/Harassment" complaint over a brief face-to-face interaction in which Professor Bionaz criticized him as a "mouthpiece" for the administration and a coward, advising that he "shut your yap" "when you don't know what you're talking about." SMF ¶¶ 35-37 & Exs. I, K. This prompted a CSU investigation by Defendant Associate General Counsel Carter, who called on Bionaz to respond to the complaint at a meeting in her office. *Id.* ¶ 36-37 & Exs. J, K. Professor Bionaz later received a letter from Carter confirming the Cyberbullying Policy had been applied to the complaint against him. *Id.* ¶ 38 & Ex. L. While Carter concluded the Policy was not violated because Wogan had not felt threatened, she called Professor Bionaz's remarks "inflammatory" and "unprofessional," and advised that "if your behavior continues, you could be found responsible for violating the Policy and subjected to disciplinary action." *Id.* The Court later brokered a non-enforcement arrangement between the parties in lieu of preliminary injunction. *See* Order, ECF No. 112.

## II.   ARGUMENT

This case presents classic First Amendment issues that arise from the rights all members of a university community have to be free from vague, open-ended, and arbitrary restrictions on speech. *Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667, 670 (1973); *Saxe v. State Coll.*

---

postings, social media site postings, internet chat room postings, and/or other internet postings." *Id.* ¶ 30.

*Area Sch. Dist.*, 240 F.3d 200, 204 (3d Cir. 2001); *UWM Post, Inc. v. Bd. of Regents of Wis. Sys.*, 774 F. Supp. 1163 (E.D. Wis. 1991) (enjoining anti-harassment policy as overbroad and vague). Vague speech codes like CSU's challenged Computer Usage Policy and Cyberbullying Policy implicate First Amendment rights and foster significant chilling concerns for those subject to the rules, as are the Plaintiffs here. *See Hynes v. Mayor of Oradell*, 425 U.S. 610, 620 (1976); *Penny Saver Publ'ns, Inc. v. Vill. of Hazel Crest*, 905 F.2d 150, 154 n.2 (7th Cir. 1990). The enactment and enforceability of such policies place at risk the exercise of First Amendment rights by all CSU faculty, students and staff and thus should be permanently enjoined.

### A. The Provisions of CSU's Computer Usage Policy Governing the Content of Communications, and its Cyberbullying Policy, are Unconstitutionally Overbroad and Vague

Vague and overbroad rules adopted by a state actor ignore the command that "precise" enactments describing the "specific conduct … proscribed" are required where First Amendment interests are affected. *Grayned v. City of Rockford*, 408 U.S. 104, 109 n.5 (1972). While the baseline is that "[d]ue process requires that laws give people of ordinary intelligence fair notice of what is prohibited," *Brown v. Entm't Software Merchs. Ass'n*, 564 U.S. 786, 807 (2011), a "lack of such notice in … regulat[ing] expression 'raises special First Amendment concerns because of its obvious chilling effect on speech.'" *Id.* (quoting *Reno v. ACLU*, 521 U.S. 844, 871-72 (1997)). "Precision of regulation must be the touchstone in an area [] closely touching our most precious freedoms," *NAACP v. Button*, 371 U.S. 415, 438 (1963), such that the "government may regulate in the area of First Amendment freedoms only with narrow speci-ficity." *Brown*, 564 U.S. at 807 (quoting *NAACP*, 371 U.S. at 433) (internal quotation marks omitted). In the First Amendment context, all enactments "targeting the content of speech must be drafted with 'precision.'" *United States v. Alvarez*, 617 F.3d 1198, 1216 (9th Cir. 2010),

*aff'd*, 132 S. Ct. 2537 (2012). But the challenged portions of CSU's Computer Usage and Cyberbullying policies are anything but "precise."

As to the Computer Usage Policy, under the mandate to "respect" both "the rights and sensibilities of others" and "the mission of the University," CSU "prohibits" "any communication" that may "embarrass," "humiliate" or "shed a negative light on" any "member of the community," and instructs that faculty, staff and students must "avoid" anything "distasteful," "inflammatory," or "harassing" while refraining from "unacceptable comments." SMF ¶ 10. This provision, which does not provide any type of threshold that speech or conduct must reach to meet these standards, allows the Policy to be enforced based on mere hurt feelings, subjective damage to reputation, and alleged mental or emotional harm. Its mandates also do not require that prohibited communications have any impact whatsoever on anyone to whom they are directed, or who hears or reads them, let alone that they operate to deprive anyone of educational opportunities or benefits. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).

This is particularly problematic insofar as speech that has worn these labels has been expressly held to be protected under the First Amendment and may not be proscribed in this manner. Speech "does not lose its protected character," for example, "simply because it may embarrass," *NAACP v. Hawthorne*, 458 U.S. 886, 910 (1982), and it is a "hallmark of protection of free speech [] to allow free trade in … even ideas that the overwhelming majority" of the community may find "distasteful or discomforting." *Virginia v. Black*, 538 U.S. 343, 358 (2003). "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable," *Texas v. Johnson,* 491 U.S. 397, 414 (1989), or, as the Computer Usage Policy puts it, "unacceptable." Indeed, if it is unconstitutional for *prison* officials, for

8

reasons unrelated to legitimate penological interests, to prohibit "inflammatory … views, and matter deemed … otherwise inappropriate," *Procunier v. Martinez,* 416 U.S. 396, 415 (1974), surely CSU violates the First Amendment in purporting to ban "inflammatory" or "otherwise unacceptable" remarks. After all, state universities "are not enclaves immune from the sweep of the First Amendment." *Healy v. James*, 408 U.S. 169, 180 (1972). Quite to the contrary, the "vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." *Shelton v. Tucker*, 364 U.S. 479, 487 (1960).

"It is settled law that a state may not directly prohibit offensive speech." *Rosen v. Port of Portland*, 641 F.2d 1243, 1249 n.10 (9th Cir. 1981). The Supreme Court has made clear that the government may not seek to excise "offensive word[s] from the public vocabulary." *Cohen v. California*, 403 U.S. 15, 22-23 (1971). *See also Gooding v. Wilson*, 405 U.S. 518, 521-22 (1972) (striking down ban on "opprobrious words or abusive language"); *Lewis v. City of New Orleans*, 415 U.S. 130 (1974) (prohibition of "opprobrious language" is facially invalid). Of particular relevance to this case, it has long been the law that "the mere dissemination of ideas – no matter how offensive to good taste – on a state university campus may not be shut off in the name alone of 'conventions of decency.'" *Papish*, 410 U.S. at 670. The Computer Usage Policy's reliance on expression being "embarrassing," "humiliating," "negative," "distasteful," "inflammatory," or "unacceptable" is, "on its face, sufficiently broad and subjective" as to include "'core' political and religious speech" and is thus unconstitutionally overbroad. *E.g.*, *DeJohn v. Temple Univ.*, 537 F.3d 301, 317-18 (3d Cir. 2008).

The Cyberbullying Policy presents similar problems, in prohibiting "harassment" of "any member of the University community." For this purpose, expressive conduct constituting harassment is any "verbal, physical, aural [sic], graphic, symbolic, or written" expression – including

9

"cyberbullying" and other "electronic harassment" – that occurs in a wide variety of on-campus and off-campus contexts. SMF ¶ 26 & Ex. F. None of these terms is defined – other than "cyberbullying," which encompasses "conduct or activity" that "harasses," "intimidates," or creates "reasonable fear of harm," as well as "harm inflicted through … electronic devices," and "use of … technologies" in support of a "hostile course of conduct that is intended to harm." SMF ¶ 27 & Ex. F.

As with the Computer Usage Policy, the Cyberbullying Policy's reliance on unadorned references to "harassment" raises immediate constitutional concern. "There is no categorical 'harassment exception' to the First Amendment's free speech clause." *Saxe*, 240 F.3d at 204; *Bair v. Shippensberg Univ.*, 280 F. Supp. 2d 357, 372 (M.D. Pa. 2003) (constitutional issues are not avoided by "[s]imply utilizing buzzwords applicable to anti-discrimination legislation"). Any regulation of harassment to prevent a hostile environment must be drafted with narrow specificity to avoid violating the First Amendment, *Cohen v. San Bernardino Valley Coll.*, 92 F.3d 968, 972 (9th Cir. 1996), which the Supreme Court has held means not prohibiting actions unless they are "severe, pervasive, and objectively offensive." *Davis Next Friend LaShonda v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 631-32 (1999); *DeJohn*, 537 F.3d at 316-18. Significantly, a wide variety of contexts in which the Cyberbullying Policy purports to prohibit "harassment" incorporate no such restriction. *See* SMF Ex. F.

Ultimately, there can be no doubt about the vagueness and overbreadth problems that are fatal to the challenged Policies. Defendants admit the terms "embarrass," "humiliate," "respect," "harassing," and "larger community" are not defined in the Computer Usage Policy. SMF ¶¶ 9, 11. And they admit "harass," "cyberbullying," and "harm" are not defined in the Cyberbullying Policy. *Id.* ¶¶ 28-29. *Cf. id.* ¶ 14-15 (CSU General Counsel admission that Computer Usage

Policy does not state how pervasive embarrassing or humiliating comments must be, "nor should there be."). The Policies accordingly make it "impossible to discern any limitation on [their] scope or any conceptual distinction between protected and unprotected conduct." *Doe v. Univ. of Mich.*, 721 F. Supp. 852, 867 (E.D. Mich. 1989). Such policies are too vague to survive First Amendment challenge. *E.g.*, *Cohen*, 92 F.3d at 972. *See also Coll. Republicans at San Francisco State Univ. v. Reed*, 523 F. Supp. 2d 1005, 1018 (N.D. Cal. 2007) (attempt to enforce "opaque and malleable" restrictions intensifies risk of deterrence "from engaging in controversial but fully protected activity out of fear of being disciplined for so doing").

The Policies also are overbroad because "a lone individual who has a negative reaction may subject the speaker to disciplinary proceedings." *McCauley v. Univ. of V.I.*, 618 F.3d 232, 251 (3d Cir. 2010). *See also Saxe*, 240 F.3d at 215 ("[T]he mere fact that someone might take offense at the content of speech is not sufficient justification for prohibiting it."). The Cyberbullying Policy, for example, requires only "hostile" expression that "is *intended* to harm others" (emphasis added). Under this formulation, speech is subject to censorship and discipline if it is "hostile" to another person or entity and is deemed to demonstrate an "intent" to harm, even if no such harm, however slight, ever occurs. *See UWM Post*, 774 F. Supp. at 1180. Where speech is subject to such a general prohibition of "harassment," broadly defined, "[e]very word spoken … on campus is subject to [regulation]." *McCauley*, 618 F.3d at 252. Such policies present the prospect that every time someone expresses thoughts that may be "inflammatory" or may "shed negative light on" others, he or she "risks causing … emotional distress and receiving punishment." *Id*.

Policies forged in this manner are too vague and overbroad to survive a First Amendment challenge. *E.g.*, *Cohen*, 92 F.3d at 972. In particular, trying to enforce such malleable concepts

as "unacceptable comments" or "negative" communications present severe constitutional problems. *Cf. Coll. Republicans*, 523 F. Supp. 2d at 1005 ("the word 'civil' is broad and elastic – and its reach is unpredictably variable in the eyes of different speakers"). Consequently, courts across the country have invalidated campus speech codes and anti-harassment policies like those at CSU.[4]

Indeed, it is impossible to see how commands about "respecting the rights of others," or generically banning speech that is claimed to "harass," "humiliate," or "embarrass," avoids being vague or overbroad. Rather, the challenged Policies grant CSU officials unfettered discretion to punish speech in violation of the First Amendment. *See*, *e.g.*, *City of Houston v. Hill*, 482 U.S. 451, 465-67 (1987); *Bell v. Keating*, 697 F.3d 445, 454, 462-63 (7th Cir. 2012); *cf. Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000); *Lewis v. Wilson*, 253 F.3d 1077, 1080-81 (8th Cir. 2001). Such malleability allows expanding or restricting operative definitions to sanction speech administrators do not like or to allow speech with which they agree.[5] Where nebulous concepts are used in this way, "'[i]t is not the penalty itself that is invalid, but the exaction of obedience to a rule or standard that is so vague … as to be really no rule or standard at all.'" *Baggett v. Bullitt*, 377 U.S. 360, 374 (1964) (citation omitted).

---

[4] *See, e.g.*, *De John*, 537 F.3d 301 (permanently enjoining overbroad sexual harassment policy); *McCauley*, 618 F.3d 232; *Saxe*, 240 F.3d at 217 (invalidating harassment policy because it could reach political and religious speech); *Iota Xi Chapter of Sigma Chi Fraternity v. George Mason Univ.*, 993 F.2d 386 (4th Cir. 1993); *Bair*, 280 F. Supp. 2d at 372; *Dambrot v. Cent. Mich. Univ.*, 839 F. Supp. 477 (E.D. Mich. 1993) (enjoining overbroad and vague "discriminatory harassment" policy), *aff'd*, 55 F.3d 1177 (6th Cir. 1995); *UWM Post*, 774 F. Supp. 1163 (policy prohibiting discriminatory epithets overbroad and vague); *Doe v. Univ. of Mich.*, 721 F. Supp. at 863 (harassment policy voided as overly broad and vague).

[5] *See, e.g.*, SMF ¶ 34 (Cage testimony that, in operation, the "fact finder's" perspective is applied to facts and allegations to determine if the Cyberbullying Policy has been violated). *Cf. Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (public employers like CSU "may not respond to their employees' protected activity with actions aimed to deter that activity").

B.  **Injunctive and Declaratory Relief are Necessary to Prevent Further Constitutional Violations**

The Court should not hesitate to grant injunctive and declaratory relief given the facial vagueness and overbreadth of the Computer Usage and Cyberbullying policies. *E.g.*, *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 634 (1980). *See also Bell*, 697 F.3d at 455 ("that the ordinance applies only if triggered does not attenuate [the] likelihood of prosecution … or subvert the concreteness of [the] chilling injury" but rather "putative vagueness surrounding those triggering events *compounds* [the] chilling") (citation omitted, emphasis in original). A permanent injunction should enter where the movant establishes actual success on the merits and can show that no remedy at law exists, that it will suffer irreparable harm absent an injunction, that that harm outweighs any the non-movant may suffer, and that an injunction is in the public interest. *Personal PAC*, 858 F. Supp. 2d at 966-67, 970-71. These requirements are readily met here.

First, the Computer Usage Policy and Cyberbullying Policy are unconstitutionally vague and overbroad, *supra* § II.A., and in First Amendment cases like this, such success on the merits is usually the determinative factor. *Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 830-31 (7th Cir. 2014). "When an alleged deprivation of a constitutional right is involved, most courts hold no further showing … is necessary," and this is "particularly true in First Amendment claims." *Ezell v. City of Chi.*, 651 F.3d 684, 699 (7th Cir. 2011) (internal quotation marks & citation omitted). *See also, e.g.*, *Teufel v. Princeton City Sch. Dist. Bd. of Educ.*, 2013 WL 143808, at *15 (S.D. Ohio Jan. 11, 2013); *Wis. Right to Life*, 751 F.3d at 830-31.

It is indisputable that Plaintiffs and the CSU community will suffer irreparable injury if injunctive relief is not granted given the scope of the policies and the prospects for future First Amendment violations. *Elrod*, 427 U.S. at 373 ("loss of First Amendment freedoms, for even

13

minimal periods of time, unquestionably constitutes irreparable injury"); *Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. No. 204*, 523 F.3d 668, 669 (7th Cir. 2008) (free-speech injuries are irreparable almost by definition). A plaintiff need not wait for a policy to be applied to him to challenge it on its face, *see Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 473-74 (7th Cir. 2012), but in this case Professor Bionaz was an immediate target of the Cyberbullying Policy. [6] And the Cyberbullying Policy was proposed in the first instance to target Plaintiffs' activities on their blog, which Defendants view as "bullying" CSU students. SMF ¶ 25. *Cf. id.* ¶ 20 & Ex. D (ethics officer enforces Computer Usage Policy by sending notices instructing CSU employees to "cease and desist" from violating the policy and threatening disciplinary action). As a consequence, injunctive relief is necessary to remove a cloud over Plaintiffs' exercise of their First Amendment rights.

Conversely, Defendants will suffer no harm because an injunction against enforcing unconstitutional policies can cause no legally cognizable injury. While Defendants have an interest in maintaining a safe and orderly campus for public education, enjoining these Policies will not alter or harm the ability to protect that interest. Defendants may still use their remaining policies and various other state and local provisions to remedy any legitimately illegal or disruptive conduct without prohibiting protected speech. Where, as here, it has been shown that challenged restrictions are unconstitutional, "no substantial harm to others can be said to inhere

---

[6] *Supra* 6 (citing SMF ¶¶ 35-38 & Exs. J-L). Plaintiffs alleged and have argued the incongruity of CSU applying a Cyberbullying Policy to Bionaz with regard to an in-person conversation. Compl. ¶¶ 43, ECF No. 1; Pls.' Opp. Mot. Dismiss 12, ECF No. 41; Pls.' Mem. in Supp. Prelim. Inj. 8, ECF No. 44. Defendants, on the other hand, describe the Cyberbullying Policy as one of general application, covering both on- and off-line speech. While this dispute is relevant to Plaintiffs' as-applied claims, the fact that the policy is open to such divergent interpretations underscores its inherent vagueness. *Cf. Beverly v. Watson*, 78 F. Supp. 3d 717, 723 (N.D. Ill. 2015) (noting varying possible readings of the Cyberbullying Policy)).

in [their] enjoinment." *Déjà vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 274 F.3d 377, 400 (6th Cir. 2001); *accord ACLU v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003), *aff'd*, 542 U.S. 656 (2004). The irreparable harm that Plaintiffs and other members of the CSU community will suffer if the injunction does not issue thus easily tips the balance of hardships in Plaintiffs' favor, further justifying issuance of an injunction. *See Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 973-74 (9th Cir. 2002).

Such "injunctions protecting First Amendment freedoms are always in the public interest.'" *Alvarez*, 679 F.3d at 590. In this respect, "the public [] has an undeniable interest in seeing that the First Amendment is enforced to protect free expression." *Entm't Software Ass'n v. Chi. Transit Auth.*, 696 F. Supp. 2d 934, 950 (N.D. Ill. 2010). Thus, the public interest inquiry also "collapses" into Plaintiffs' showing of success on the merits. *Alvarez*, 679 F.3d at 589.

Finally, this Court should issue a declaration that the challenged Policies are unconstitutional. Such a judgment will clarify and settle disputed legal relationships and afford relief from the uncertainty and controversy that created the issues. *NUCOR Corp.*, 28 F.3d at 577. An order is imperative where, as here, there has been "[p]ast exposure to illegal conduct." *Admiral Theater v. City of Chi.*, 832 F. Supp. 1195, 1201 (N.D. Ill. 1993). Although the broader consequences await resolution of Plaintiffs' as-applied challenge, Defendants have sought to use the challenged policies to the detriment of each of the Plaintiffs, rendering declaratory relief both proper and necessary.

### III. CONCLUSION

This Court should grant summary judgment to Plaintiffs on Counts I and II of their Complaint by issuing a permanent injunction to bar enforcement of provisions of the Computer Usage Policy and/or Cyberbullying Policy that are unconstitutionally vague and overbroad, and should issue a declaratory ruling holding that those provisions violate the First Amendment.

DATED:  June 30, 2016

By: _____ */s/ Robert Corn-Revere*_____
ROBERT CORN-REVERE
   (*pro hac vice*)
bobcornrevere@dwt.com
RONALD G. LONDON
   (*pro hac vice*)
ronnielondon@dwt.com
LISA B. ZYCHERMAN
   (*pro hac vice*)
lisazycherman@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC  20006
Telephone: (202) 973-4200

JESSICA TOVROV
GOODMAN TOVROV HARDY & JOHNSON LLC
105 West Madison Street, Suite 1500
Chicago, IL 60602
Telephone: (312) 252-7362
jessica@tovrovlaw.com

Attorneys for Plaintiffs Phillip Beverly
   and Robert Bionaz