# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| PHILLIP BEVERLY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:14-CV-04970 |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| WAYNE D. WATSON, et al., | ) | Magistrate Judge Sheila Finnegan |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

I.     BACKGROUND ............................................................................................ 1

      A.     PLAINTIFFS ..................................................................................... 2

            1.     Robert Bionaz ....................................................................... 2

            2.     Phillip Beverly ...................................................................... 3

      B.     DEFENDANTS ................................................................................. 4

            1.     Janelle Carter ........................................................................ 4

            2.     Defendant Patrick Cage ........................................................ 4

            3.     Defendant Wayne Watson ..................................................... 5

ARGUMENT ......................................................................................................... 6

II.     BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT WITH RESPECT TO ESSENTIAL ELEMENTS OF EACH OF PLAINTIFFS' CLAIMS, THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR DEFENDANTS ON ALL COUNTS. .................................................................. 6

      A.     COUNT I ......................................................................................... 7

      B.     COUNT II ........................................................................................ 9

      C.     COUNT III ...................................................................................... 11

III.     ALL COUNTS (I-IV) AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITY ARE ALSO BARRED BY SOVEREIGN IMMUNITY UNDER THE ELEVENTH AMENDMENT. .................................................................. 15

      A.     SOVEREIGN IMMUNITY BARS ALL DAMAGE CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITY ......................................... 16

      B.     BECAUSE PLAINTIFFS FAIL TO PROVIDE ANY EVIDENCE OF AN ONGOING VIOLATION OF THEIR CONSTITUTIONAL RIGHTS, SOVEREIGN IMMUNITY ALSO BARS PLAINTIFFS' CLAIMS FOR PROSPECTIVE INJUNCTIVE AND DECLARATORY RELIEF .................... 16

IV.     QUALIFIED IMMUNITY PRECLUDES PLAINTIFFS' CLAIMS .............................. 18

      A.     NO CLEARLY ESTABLISHED RIGHT IS AT ISSUE ..................................... 18

B.     DEFENDANTS WERE PERFORMING DISCRETIONARY FUNCTIONS THAT ARE PROTECTED BY QUALIFIED IMMUNITY; NO REASONABLE PERSON WOULD CONSIDER THE EXERCISE OF THESE FUNCTIONS AS AN OBVIOUS CONSTITUTIONAL VIOLATION......................................................................................... 20

     1.     Defendant Carter .................................................................... 21

     2.     Defendant Cage....................................................................... 22

     3.     Defendant Watson................................................................... 23

C.     QUALIFIED IMMUNITY PROTECTS DEFENDANTS FROM PERSONAL LIABILITY AS THEIR ACTIONS WERE REASONABLE AND ARE NOT CLOSE TO RISING TO THE LEVEL OF BEING "PLAINLY INCOMPETENT."......................................................... 24

**CONCLUSION** ....................................................................................... 25

**TABLE OF AUTHORITIES**
**Cases, Rules and Regulations**

**Federal Court Cases**

*Ameritech Corp. v. McCann*,
　　297 F.3d 582 (7th Cir. 2002) ............................................................................... 18

*Anderson v. Creighton*,
　　483 U.S. 635 (1987)........................................................................ 19, 21, 23, 25

*Ashcroft v. al-Kidd*,
　　563 U.S. 731 (2011)................................................................................................ 19

*Bartley v. Taylor*,
　　25 F. Supp. 3d 521 (M.D. Penn. 2014)................................................................. 14

*Benson v. Allphin*,
　　786 F.2d 268, 276 (7th Cir.1986) ......................................................................... 25

*Brosseau v. Haugen*,
　　543 U.S. 194 (2004)................................................................................................. 20

*Brown v. Chicago Bd. of Educ.*,
　　973 F. Supp. 2d 870 (N.D. Ill. 2013) .................................................................... 20

*Cannon v. Univ. of Health Scis./The Chicago Med. Sch.*,
　　710 F.2d 351 (7th Cir. 1983) ................................................................................. 16

*Casteel v. Pieschek*,
　　3 F.3d 1050 (7th Cir. 1993) ................................................................................... 19

*Celotex Corp. v. Catrett*,
　　477 U.S. 317 (1986)................................................................................................... 6

*Chiang v. Lappin*,
　　No. CIV. A. RDB-07-1017, 2008 WL 2945434 (D. Md. July 24, 2008)............... 16

*Chicago Joe's Tea Room, LLC v. Vill. of Broadview*,
　　No. 07 C 2680, 2008 WL 4287002 (N.D. Ill. Sept. 11, 2008)................................. 8

*Ctr. For Individual Freedom v. Madigan*,
　　697 F.3d. 464 (7th Cir. 2012) ...................................................................... 7, 8, 9, 10

*Denius v. Dunlap*,
　　209 F.3d 944 (7th Cir. 2000) .................................................................................. 21

*Doninger v. Niehoff*,
　　642 F.3d 334 (2d Cir. 2011) ................................................................................... 20

*Edelman v. Jordan*,
　　415 U.S. 651 (1974)................................................................................................. 17

*Erznoznik v. City of Jacksonville*,
　　422 U.S. 205 (1975) .................................................................................................. 7

*Ex parte Young*,
  209 U.S. 123 (1908) ................................................................................................ 17

*Feldman v. Bahn*,
  12 F.3d 730 (7th Cir. 1993) .............................................................................. 16, 25

*Freedom from Religion Found., Inc. v. City of Marshfield, Wis.*,
  203 F.3d 487 (7th Cir. 2000) ........................................................................ 6, 7, 9

*Green v. Mansour*,
  474 U.S. 64 (1985) .................................................................................................. 17

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) .................................................................................... 18, 21, 25

*Hernandez v. Cook Cty. Sheriff's Office*,
  634 F.3d 906 (7th Cir. 2011) ................................................................................ 18

*Hosty v. Carter*,
  412 F.3d 731 (7th Cir. 2005) .......................................................................... 19, 25

*Hunter v. Bryant*,
  502 U.S. 224 (1991) ................................................................................................ 25

*Jackson v. Ladner*,
  626 Fed. Appx. 80 (5th Cir. 2015) ...................................................................... 20

*Keefe v. Adams*,
  840 F.3d 523 (8th Cir. 2016) ................................................................................ 20

*Kentucky v. Graham*,
  473 U.S. 159 (1985) ................................................................................................ 16

*Kidwell v. Eisenhauer*,
  679 F.3d 957 (7th Cir. 2012) .................................................................................. 6

*Kompare v. Stein*,
  801 F.2d 883 (7th Cir. 1986) ................................................................................ 22

*Lassiter v. Alabama A & M University*,
  3 F.3d 1482 (11th Cir.1993) ................................................................................ 16

*Loving v. Boren*,
  956 F. Supp. 953 (W.D. Okla. 1997), *aff'd*, 133 F.3d 771 (10th Cir. 1998) ............................ 8

*Massey v. Johnson*,
  457 F.3d 711 (7th Cir. 2006) .................................................................... 14, 15, 24

*McCullen v. Coakley*,
  134 S. Ct. 2518 (2014) .................................................................................... 11, 12

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985) ................................................................................................ 18

*New West, L.P. v. City of Joliet*,
  491 F.3d 717 (7th Cir. 2007) ................................................................................ 13

*Pichelmann v. Madsen*,
   31 F. App'x 322 (7th Cir. 2002) ........................................................................ 8

*Poullard v. McDonald*,
   829 F.3d 844 (7th Cir. 2016) ............................................................................ 6

*Purvis v. Oest*,
   614 F.3d 713 (7th Cir. 2010) ........................................................................... 25

*Salau v. Denton*,
   139 F. Supp. 3d 989 (W.D. Mo. 2015) ....................................................... 22, 24

*Sauzek v. Exxon Coal USA, Inc.*,
   202 F.3d 913 (7th Cir. 2000) ....................................................................... 15, 24

*Shanahan v. City of Chicago*,
   82 F.3d 776, 781 (7th Cir.1996) ...................................................................... 16

*Sheikh v. Rabin*,
   565 F. App'x 512 (7th Cir. 2014) ................................................................... 13

*Siebert v. Severino*,
   256 F.3d 648 (7th Cir.2001) ........................................................................... 21

*Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*,
   69 F. Supp. 3d 530 (E.D. Pa. 2014), *aff'd*, 655 F. App'x 103 (3d Cir. 2016) ........................ 13

*Swetlik v. Crawford*,
   738 F.3d 818 (7th Cir. 2013) ........................................................................... 13

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
   546 F.3d 991 (9th Cir. 2008) ........................................................................... 13

*Thomas v. Ramos*,
   130 F.3d 754 (7th Cir. 1997) ........................................................................... 19

*Tonkovich v. Kansas Board of Regents*,
   159 F.3d 504 (10th Cir. 1998) ......................................................................... 24

*United Mine Workers of America v. Pennington*,
   381 U.S. 657 (1965) .................................................................................. 13, 14

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*
   455 U.S. at 494 (1982) .................................................................................... 9

*Virginia Office for Prot. & Advocacy v. Stewart*,
   563 U.S. 247 (2011) ...................................................................................... 17

*Volkman v. Ryker*,
   736 F.3d 1084 (7th Cir. 2013) ......................................................................... 19

*Washington State Grange v. Washington State Republican Party*,
   552 U.S. 442 (2008) ........................................................................................ 7

*Wis. Educ. Ass'n Council v. Walker*,
   705 F.3d 640 (7th Cir. 2013) ............................................................................ 9

*Yeasin v. Durham*,
   No. 2:16-CV-02010-JAR, 2016 WL 7014027 (D. Kan. Dec. 1, 2016) ............................ 19, 20

*Yoder v. Univ. of Louisville*,
   526 Fed.App'x. 537 (6th Cir. 2013) ...................................................................................... 20

*Young v. American Mini Theatres, Inc.*,
   427 U.S. 50 (1976) ...................................................................................................................... 8

**Federal Rules and Regulations**

Fed. R. Civ. P. 56 ................................................................................................................................ 1

Fed. R. Civ. P. 56(a) ......................................................................................................................... 6

**State Rules and Regulations**

Local Rule 56.1 ................................................................................................................................... 1

**Additional Authorities**

Am. Jur. 2d Public Officers and Employees § 318. .................................................................. 21

## INTRODUCTION

More than two years ago, on July 1, 2014, Plaintiffs Phillip Beverly and Robert Bionaz, professors at Chicago State University ("CSU" or the "University"), filed this lawsuit alleging violations of the First Amendment by Defendants: CSU's Board of Trustees; then-President, Wayne Watson; Vice President for Labor and Legal Affairs and General Counsel, Patrick Cage; and former Associate General Counsel, Janelle Carter. Compl. ¶¶ 13-16. All claims against the CSU Board were dismissed on September 12, 2014, on sovereign immunity grounds. Docket Entry (Doc. 21). At this time, Plaintiffs' claims remain pending only against the individual Defendants in both their official and personal capacities. (Doc. 36).

These individual Defendants, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, hereby move for summary judgment on Plaintiffs' remaining claims. First, there is no disputed genuine issue of fact with respect to material elements of the Plaintiffs' claims. Moreover, all of the Plaintiffs' claims against the Defendants are precluded outright based on immunity grounds. Sovereign immunity bars all claims against Defendants in their official capacities. Likewise, qualified immunity precludes Plaintiffs' claims against Defendants in their individual capacities. For these reasons, summary judgment should be granted in favor of Defendants on all of Plaintiffs' claims, and the case should be dismissed.[1]

## I.  BACKGROUND

Plaintiffs are founders and contributors to an independent blog entitled *CSU Faculty Voice* that is critical of the CSU administration.  Statement of Undisputed Material Facts In Support of Defendants' Motion for Summary Judgment (SMF) ¶¶1. Their Complaint against Defendants has four counts, all based on their contention that Defendants have sought to shut

---

[1] In addition, Defendants assert this Court lacks jurisdiction as Plaintiffs cannot demonstrate they have standing to even raise any of their claims. *See* Doc 216, Defendants' Amended Motion to Dismiss for Lack of Subject Matter Jurisdiction.

down or censor the blog and attempted to silence Plaintiffs through CSU policies and other actions. SMF ¶¶11-13. Counts I and II assert the University's Computer Usage and Cyberbullying policies (collectively, the "Challenged Policies") were enacted to suppress their free speech and are unconstitutional on their face; Plaintiffs seek injunctive relief related to these counts. SMF ¶11. Count III is an "as-applied" claim, which asserts Defendants' application of the Challenged Policies violated their right to free speech. Count III also appears to assert that Defendants took certain other actions against Plaintiffs either to deter, or in retaliation for, Plaintiffs' expressive activities. SMF ¶12. These alleged actions, among other things, include the issuance by the General Counsel of CSU, Defendant Patrick Cage, of a cease-and-desist letter related to Plaintiffs' blog. SMF ¶¶34, 44. The letter asked Plaintiffs to cease their unauthorized use of CSU's names and marks on the blog. SMF ¶¶45-47. Count III seeks both injunctive relief and damages. SMF ¶12. In Count IV, Plaintiffs seek a declaratory judgment and injunction based on Counts I-III. SMF ¶13. For all Counts, Plaintiffs seek attorneys' fees. Compl. at VII.

### A. Plaintiffs

#### 1. Robert Bionaz

Plaintiff Robert Bionaz, is a tenured, associate professor of history at CSU. SMF ¶2. He has worked at the University for approximately 15 years. SMF ¶2. He is the President of the CSU Faculty Union and a member of the Faculty Senate. SMF ¶2. Plaintiff Bionaz also is a founder and regular contributor to the *CSU Faculty Voice* blog. SMF ¶1. Despite the allegations in this lawsuit, over time Plaintiff Bionaz's blog postings have dramatically increased in number. Tab "O" – Defendants' Disclosure of Expert Testimony and Expert Report of Michal A. Malkiewicz, at p. 5, ¶6; p. 18, ¶23.; *see also* p. 26-27, ¶37. Before issuance of the November 2013 cease-and-desist letter directed to the blog, Bionaz posted on average 1.53 posts per month. *Id.* at p. 18, ¶23. In contrast, since that time and after filing this lawsuit and while the

Challenged Policies were in effect, Bionaz's posts increased (as of September 2015) on average to 11.35 posts per month (a 642% increase). *Id.* It also is undisputed that Plaintiff Bionaz's posts are highly critical of the CSU administration and have remained so in spite of any alleged actions by the Defendants.

According to Plaintiff Bionaz, the blog has flourished and neither the cease-and-desist letter nor the Challenged Policies have hampered the blog or his posts. SMF ¶¶31-33, 55. As for the cease-and-desist letter, he does not know what motivated it being sent. SMF ¶56. As for the Challenged Policies, "as far as [he] can tell" the policies have never been enforced against the blog. SMF ¶¶ 19-20; 33. Plus, he has no evidence the policies even apply to the blog, and the policies have not caused him to refrain from posting. SMF ¶30. Furthermore, the blog always continued operating without interruption. SMF ¶¶33, 55.

### 2.  Phillip Beverly

Plaintiff Phillip Beverly is a tenured, associate professor of political science at CSU; he has worked at the University for approximately 25 years. SMF ¶3. He is the past President of the CSU Faculty Senate. SMF ¶3. Like Plaintiff Bionaz, Plaintiff Beverly also is a founder and regular contributor to the *CSU Faculty Voice* blog. SMF ¶1 Also, like Bionaz, over time Plaintiff Beverly's average number of monthly blog posts has increased (not decreased). Tab "O" at p. 5, ¶6; p. 18, ¶23.  Before issuance of the November 2013 cease-and-desist letter, Beverly posted on average 2.21 posts per month.  *Id.* at p. 17, ¶ 22. This average number of monthly posts increased (as of September 2015) to 3.09 posts per month. *Id.* Not only has Beverly's posting increased since the cease-and-desist letter, Beverly believes his post related to the letter itself received the most hits of any post ever on the blog. SMF ¶31.  It also is undisputed that Plaintiff Beverly's posts are highly critical of the CSU administration and have remained so in spite of any alleged actions by the Defendants.

Plaintiff Beverly also admits that—despite the Challenged Policies—"interest in the *CSU Faculty Voice* has surged." Tab "O" at p. 13, ¶14. In fact, when asked why the policies were challenged, Plaintiff Beverly explained the Plaintiffs filed suit because they "felt [the policies] were just not on." SMF ¶14. Yet, Plaintiff Beverly has no evidence that the policies prevented him from posting blog articles. Beverly also concedes that neither policy was ever enforced against him. SMF ¶¶21; 29.

**B.    Defendants**

**1.    Janelle Carter**

Janelle Carter is a former CSU Associate General Counsel and Equal Opportunity Officer ("EEO"). SMF ¶6. In this role, Defendant Carter, an attorney, was responsible for providing legal advice and counsel for the University; representing the University before a number of administrative agencies; conducting investigations; and overseeing disciplinary matters. SMF ¶6. Her duties included investigating complaints of harassment under CSU policies, including the Cyberbullying Policy, which covers all forms of harassment. SMF¶¶37*; see also* Tab "J" – Cyberbullying Policy, at 7-8 (Complaint Procedures) (requires EEO Officer to investigate harassment complaint).   As part of her job responsibilities, in May 2014 Defendant Carter investigated a complaint made by then-CSU Director of Public Relations, Tom Wogan, against Plaintiff Bionaz. SMF ¶36-37. After completing her investigation, on September 22, 2014, Defendant Carter notified Plaintiff Bionaz by letter that her investigation determined he had **not** violated the Cyberbullying Policy. SMF ¶38.

Defendant Carter's employment with CSU ended in April 2016.  SMF ¶7.

**2.    Defendant Patrick Cage**

Defendant Patrick Cage is CSU's Vice President for Labor and Legal Affairs and General Counsel. SMF ¶8. In this role, he is responsible for the management of all legal issues and claims

related to the University, including ensuring the University's intellectual property rights are protected. *Id*. Over three years ago, on November 11, 2013, Defendant Cage, as General Counsel, sent a cease-and-desist letter to Plaintiff Beverly related to the *CSU Faculty Voice* blog. SMF ¶45-46. The letter advised Beverly that the blog included the "unauthorized use of the CSU names and marks" and that such use could suggest that the blog was officially associated with or approved by CSU. SMF ¶47. The letter to Plaintiffs was a small part of a CSU effort to update and enforce the University's protected marks as CSU joined the Western Athletic Conference. SMF ¶¶45.

Within approximately six days of Plaintiff Beverly receiving the cease and desist letter, references to "Chicago State University" and related images in the blog masthead were either removed or altered to no longer expressly reference the University. SMF ¶50. After removing the CSU marks from the blog, on November 27, 2013, Plaintiffs' legal counsel sent a letter to Defendant Cage, setting forth Plaintiffs' position with respect to images on their blog. SMF ¶51. On January 3, 2014, outside counsel for CSU responded to this letter by acknowledging the changes made to the blog but reserving the University's right to pursue future legal action if the blog improperly used University names and marks. SMF ¶52. The letter also explicitly stated, "it is not the University's intention to censor or inhibit the professors' speech." SMF ¶53. Since the first week of January 2014—three years ago—there has been no further action by Defendant Cage or any University counsel related to the use of CSU names and marks on Plaintiffs' blog. SMF ¶54.

Defendant Patrick Cage is the only individual defendant who remains employed at CSU.

### 3. Defendant Wayne Watson

Wayne Watson is the former President of CSU. SMF ¶4. According to CSU's bylaws, the President is the chief executive officer of the University and reports to the CSU Board of

5

Trustees. *See* Tab "C" – CSU Bylaws at Article VII. The President is responsible for the "organization, management, direction, and general supervision of the University and … [its] effective administration and management …." *Id.* Watson described his role at CSU as executing the "mission and vision of the university; to govern the academic, financial and operational components of the university; to look out for the overall health of the university both in terms of resources and students; and to engage the community." SMF ¶4.

Defendant Watson retired in 2015 and is no longer the President of CSU. SMF ¶5.

## ARGUMENT

Defendants move for summary judgment on all counts of Plaintiffs' Complaint. Summary judgment is justified when the nonmoving parties cannot establish an essential element of their case on which they bear the burden of proof. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012). As such, Federal Rule of Civil Procedure 56(a) provides that "[s]ummary judgment is appropriate when there is no dispute of material fact and the moving party is entitled to judgment as a matter of law." *Poullard v. McDonald,* 829 F.3d 844, 852 (7th Cir. 2016)(citing Fed. R. Civ. P. 56(a)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Freedom from Religion Found., Inc. v. City of Marshfield, Wis*., 203 F.3d 487, 490–91 (7th Cir. 2000), as amended on denial of reh'g and reh'g en banc (Mar. 22, 2000).

## II. BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT WITH RESPECT TO ESSENTIAL ELEMENTS OF EACH OF THE PLAINTIFFS' CLAIMS, THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR DEFENDANTS ON ALL COUNTS.

Defendants previously addressed some of the reasons why Plaintiffs' claims must fail. *See* Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment (on Counts I and II) (Doc. 189) and Amended Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 216). Defendants incorporate these prior arguments by reference and reiterate some of

them below in addressing why there are essential elements of each Count of the Complaint that the Plaintiffs cannot establish.

A.  **Count I.**  **CSU's Computer Usage Policy is constitutional. Thus, summary judgment should be granted in favor of Defendants on Count I.**

In Count I, Plaintiffs challenge CSU's Computer Usage Policy on its face, claiming it is unconstitutionally overbroad and vague. Plaintiffs ask this Court to take the disfavored action of striking down the policy by enjoining Defendants from enforcing the policy.[2]  *See, e.g.*, *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008); *Ctr. For Individual Freedom v. Madigan*, 697 F.3d. 464, 470-71 (7th Cir. 2012). However, as articulated in Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment, Plaintiffs fail to meet the high threshold burden required before this Court may even consider such an action.  (Doc. 189).

Namely, Plaintiffs fail to provide any evidence that the Computer Usage Policy has *any* chilling effect on speech.  The law is clear: "the potential chilling effect on protected speech must be both 'real and substantial' to invalidate a statute as void for vagueness in a facial challenge." *Ctr. for Individual Freedom*, 697 F.3d at 479 (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975)); *see also Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, No. 07 C 2680, 2008 WL 4287002, at *23 (N.D. Ill. Sept. 11, 2008) (citing *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 60 (1976) to describe how a facial challenge will only lie where the deterrent effect on legitimate expression is "real and substantial").  Due to the dramatic and entirely prospective nature of a facial invalidation, courts require this heightened level of proof, ensuring that this disfavored remedy is employed only in circumstances in which

---

[2] As noted in Defendants' Amended Motion to Dismiss, the Computer Usage Policy has never been enforced against Plaintiffs or any employee at CSU.  Doc. 216, Amended Motion to Dismiss for Lack of Subject Matter Jurisdiction at 10-12; *see also* SMF ¶18-21.

plaintiffs can demonstrate an actual threat to interfere, substantially, with their First Amendment freedoms. Here, Plaintiffs cannot demonstrate *any* threat of a chilling effect—much less one that is "real and substantial." As such, their facial challenge must fail. *Ctr. For Individual Freedom v. Madigan*, 697 F.3d. at 479.

After years of discovery, Plaintiffs cannot make the required showing. In fact, there is no evidence of any chilling effect as a result of the Computer Usage Policy *whatsoever*—far from the "real and substantial" standards required for facial challenges. To the contrary, Plaintiffs' own testimony, Defendants' unrefuted expert analysis, and Plaintiffs' blog itself all clearly establish that the University's policies have had no chilling effect on Plaintiffs' speech.[3] *See, e.g.,* Doc. 189 at 3-7; Doc. 216 at I.A.

Moreover, the Computer Usage Policy's is limited by its own terms. It only applies to CSU-owned technology assets.[4] SMF ¶¶15-16. This limitation makes it impossible for Plaintiffs to demonstrate that the policy reaches a "substantial amount" of constitutionally protected speech. *See, e.g.,* SMF ¶¶15-17. And, the policy certainly does not address the blog at the heart of this lawsuit, as it is undisputedly operated independent of CSU computer resources. SMF ¶15. Nothing in CSU's Computer Usage Policy restricts the speech individuals may engage in using their own resources. SMF ¶16. While Plaintiffs may have originally been able to *plead* a violation based on their incorrect belief that the policy extended further, discovery

---

[3] Plaintiffs' unabated speech is evidenced by their recent blog posts: Philip Beverly, *And I Was Thinking We Were Headed to Double Secret Financial Exigency*, CSU FACULTY VOICE (Dec. 9, 2016, 12:00 PM), http://csufacultyvoice.blogspot.com/2016/12/and-i-was-thinking-we-were-headed-to.html; Robert Bionaz, *Waste, Fraud, and Abuse of Resources. Sounds Like Chicago State*, CSU FACULTY VOICE (Nov. 18, 2016, 7:45 AM), http://csufacultyvoice.blogspot.com/2016/11/waste-fraud-and-abuse-of-resources.html.
[4] As Defendants previously explained, CSU's computer assets are a nonpublic forum. Doc. 189 at 9-10. *See, e.g.*, *Pichelmann v. Madsen*, 31 F. App'x 322, 327 (7th Cir. 2002) (university's e-mail system likely a nonpublic forum); *Loving v. Boren*, 956 F. Supp. 953, 955 (W.D. Okla. 1997) (university computer and internet services are a nonpublic forum), *aff'd*, 133 F.3d 771 (10th Cir. 1998).

belied those claims. *See* Doc. 216 at 3-5. The unrefuted evidence now establishes that this policy applies only to activities that CSU has an inherent ability to regulate.

Because CSU's computer and technology assets constitute a non-public forum, the University may regulate their use in any manner as long as the policies are "viewpoint neutral and reasonable in light of the purpose served by the forum." *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 647 n.3 (7th Cir. 2013). Plaintiffs have never attempted to demonstrate that the Computer Usage Policy is not viewpoint neutral or reasonable, nor is there any credible argument that the policy does not meet this standard. This is critical, because Plaintiffs must demonstrate a "real and substantial" threat to their *constitutionally protected* speech rights. As it turns out, CSU had (and has) a nearly unfettered right to regulate precisely the speech encompassed by the policy. *See Ctr. for Individual Freedom*, 697 F.3d at 479 ("'In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.' If it does not, then under either theory the facial challenge must fail." (quoting *Flipside*, 455 U.S. at 494)).

Because no dispute of material fact remains with respect to the effect of the Computer Usage Policy on Plaintiffs' speech or the policy's limitation to technology assets owned and operated by CSU, Defendants are entitled to summary judgment on Count I as a matter of law.

**B.  Count II.  CSU's Cyberbullying Policy is constitutional. Therefore, Defendants should be granted summary judgment on Count II.**

In Count II Plaintiffs assert a facial challenge to CSU's Cyberbullying Policy on the same constitutional grounds. Once again, because the relief requested seeks complete, prospective invalidation of the entire policy, Plaintiffs must establish a real and substantial threat to constitutionally protected speech. But, Plaintiffs again ask this Court to ignore this "high bar" required to strike down the policy. *See, e.g.*, *Individual Freedom*, 697 F.3d. at 470-471.

Without any evidence of a "real and substantial" chilling of a "substantial amount" of speech, Plaintiffs ask this Court to enjoin the enforcement of the policy.[5]  Indeed, Plaintiffs can show no evidence that the policy was ever enforced against them, injured them, or had any effect on their speech. SMF ¶¶26-30; *see also* Tab "O" (finding that Plaintiffs' posting has increased).

Plaintiffs also make no attempt to evaluate the policy as a whole or provide any of the terms they discuss in context. Instead, Plaintiffs cherry-pick several words out of various sections, and claim that the policy is vague and overbroad because those terms are not specifically defined. (Doc. 163 at 9-10). Notably, Plaintiffs fail to acknowledge the policy's express acknowledgment that it must, and does, protect First Amendment rights. SMF ¶22; *see also* Doc. 189 at 16-17.

Furthermore, Plaintiffs mischaracterize the scope of the Cyberbullying Policy. The policy expressly limits its application to off-campus speech *only* when it is "intended by the speaker to reach the CSU campus *and, does, in fact, reach the CSU campus.*" Tab "J" at 5.  Even then, the policy only applies if the speech in question then falls within one of the nine explicitly prohibited categories outlined in the policy. *Id.*  The policy was written in such a way as to narrowly grant CSU jurisdiction over conduct that violates the policy, but **only** in instances that invade the campus space. SMF ¶23.  Because the policy limits its application to a narrow set of circumstances and purports to regulate only certain types of speech, Plaintiffs' arguments fail.

---

[5] Plaintiffs admit the Cyberbullying Policy has never been enforced against them or chilled their speech. SMF ¶¶26-30. In fact, the policy has not been enforced against anyone. SMF ¶ 26. Nonetheless, Plaintiffs may attempt to cite Defendant Carter's September 2014 letter to Plaintiff Bionaz as evidence of a "real and substantial" threat. SMF ¶¶35-36. This argument is simply nonsensical. First, Carter's letter was issued over two years ago and nothing has happened since that time. SMF ¶42. This demonstrates anything but a "real and substantial" threat to Bionaz. Second, Carter's letter found that Bionaz's "single confrontation" with former CSU employee, Tom Wogan, did **not** violate the Cyberbullying Policy, which would require persistent harassment of Wogan. SMF ¶41. This cannot form the basis of a "real and substantial" threat as neither Wogan nor Carter are currently employed by CSU, making a finding by Carter (or anyone) that Bionaz is persistently harassing Wogan an impossibility. SMF ¶¶7, 43.

Once again, there is no evidence to demonstrate there is *any* risk of a violation of Plaintiffs' First Amendment rights, much less the "real and substantial" chilling of a "substantial" amount of constitutionally protected speech, and summary judgment should be granted as to Count II.

## C. Count III. Plaintiffs' "As-Applied" claim cannot withstand summary judgment for multiple reasons. Thus, summary judgment on Count III in favor of Defendants is warranted.

In their Complaint, Plaintiffs title Count III as an "as applied" challenge to the same policies. However, Plaintiffs admit that the policies were never "applied" against them. SMF ¶¶18-21; 26-30. Because Plaintiffs' as-applied challenge seeks to redress supposed "applications" of the policies (as opposed to the prospective invalidation sought in the facial challenges in Counts I and II), it is essential that Plaintiffs demonstrate an actual application. It is "an uncontroversial principle of constitutional adjudication: that a plaintiff generally cannot prevail on an *as-applied* challenge without showing that the law has in fact been (or is sufficiently likely to be) unconstitutionally *applied* to him." *McCullen v. Coakley*, 134 S. Ct. 2518, n.4 (2014). In their complaint, Plaintiffs identify three discrete instances they believe form the basis for an as-applied challenge. But the undisputed facts do not support these allegations.

*First*, Plaintiffs appear to assert that CSU's investigation of a harassment complaint against Plaintiff Bionaz filed by Tom Wogan (not Defendants) is an as-applied violation by Defendants of the Cyberbullying Policy in violation of Plaintiff Bionaz's First Amendment rights. SMF ¶¶34, 36. This is unsupported by the record–through undisputed facts–for several reasons. It is undisputed that CSU did not enforce the policy against Bionaz. In fact, it is undisputed that Bionaz was specifically informed by Defendant Carter he *did not* violate the policy. SMF ¶38. It is undisputed that the policy *required* CSU to investigate the complaint—it did not have the ability to simply ignore the complaint. SMF ¶37. Most importantly, even if

11

Plaintiffs were able to establish a fact issue regarding the propriety of the investigation, it is indisputable that the one investigation of Plaintiff Bionaz, which resulted in the non-enforcement of the Cyberbullying policy, also had no impact on either of Plaintiffs' expressive activities. SMF ¶¶30; 39. *See also* Tab "O"; Doc. 216 at 12-13; Doc 189 at 3-4, 6-7. Without any harm to Plaintiff Bionaz's expressive activities, a First Amendment claim cannot stand. *McCullen,* 134 S.Ct. at n4.

*Second*, Plaintiffs appear to assert that the November 2013 cease-and-desist letter is an as-applied violation of their First Amendment rights. Once again, as Defendants have briefed extensively in several briefs throughout this case, there is no evidence that this letter caused *any* deprivation of Plaintiffs' speech rights, whatsoever. SMF ¶¶54-55, 58; *see also* Tab "O"; Doc. 216 at 10-13, n.7. Furthermore, the undisputed evidence demonstrates that the letter had nothing to do with the Computer Usage Policy.[6] And, despite Plaintiffs' bald assertions to the contrary (which have now been disproven), it is undisputed that the Computer Usage Policy applies to *only* CSU's technology assets, and has *never* been applied to any other context. SMF ¶¶15-16, 18-21.

Moreover, even if Plaintiffs had a plausible claim based on this letter, such a claim would be completely barred by the *Noerr-Pennington* doctrine. Under the *Noerr-Pennington* doctrine, there is absolute immunity against liability for petitioning conduct, including the threat of legal action as a means to enforce intellectual property rights. *See, e.g.*, *Sheikh v. Rabin*, 565 F. App'x 512, 517 (7th Cir. 2014); *see also Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*, 69 F. Supp. 3d 530, 534 (E.D. Pa. 2014), *aff'd*, 655 F. App'x 103 (3d Cir. 2016) (applying *Noerr-Pennington*

---

[6] In addition to the fact the Computer Usage Policy was never enforced against Plaintiffs, Defendant Cage explained that the cease-and-desist letter "had nothing to do with the computer use policy." Tab "H" – Cage Dep. Tr. at 70:7-8.

doctrine to a trademark cease-and-desist letter).[7] The *Noerr-Pennington* protection extends to state entities and their employees. *See Swetlik v. Crawford*, 738 F.3d 818, 830 (7th Cir. 2013) (Easterbrook, J., concurring); *New West, L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007). In addition to providing immunity for filing lawsuits, the doctrine provides immunity for pre-litigation activity—such as the cease-and-desist demand letters sent in this case. *See, e.g., Theme Promotions, Inc. v. News Am. Mktg. FSI,* 546 F.3d 991, 1007 (9th Cir. 2008)("Conduct incidental to a lawsuit, including a pre-suit demand letter, falls within the protection of the *Noerr–Pennington* doctrine").

"Immunity under *Noerr–Pennington* applies 'regardless of intent or purpose.'" *Sheikh*, 565 F. App'x at 517 (quoting *United Mine Workers of America v. Pennington*, 381 U.S. 657, 670 (1965)). The only possible exception is if the petition at issue (here the demand letters) are a "sham." The Supreme Court has imposed an incredibly strict standard to prove a true "sham," requiring the proof to be *both* objective and subjective. *Id.* Tellingly, once CSU's marks were removed from the blog, the University's cease-and-desist activity stopped (SMF ¶¶50, 54), evidencing that the University's demands were a legitimate effort to protect University marks, not a sham. Given the good-faith nature of CSU's actions, Plaintiffs cannot show and have not shown that CSU's demand was a sham. *See, e.g., Bartley v. Taylor*, 25 F. Supp. 3d 521, 535-538 (M.D. Penn. 2014) (providing *Noerr-Pennington* immunity to a university athletic director from claim of First Amendment retaliation). Accordingly, the *Noerr-Pennington* doctrine serves to insulate Defendant Cage from liability for simply doing his job as CSU's General Counsel by protecting CSU's intellectual property. Therefore, no liability in this case—based on an as-

---

[7] The *Noerr-Pennington* doctrine began in antitrust law, but has since been extended to all contexts.

applied challenge, First Amendment retaliation, or otherwise—can arise from the trademark demand letters sent to Plaintiffs.[8]

*Third*, Plaintiffs' Complaint includes what appears to be an allegation that Plaintiff Beverly was wrongfully punished by Defendant Watson in retaliation for expressive conduct. SMF ¶59. This claim—on its face—is in no way an "as applied" challenge to either policy, because Plaintiffs do not even assert any connection between this action and the policies. Thus, the Court should dismiss this claim outright, because Plaintiffs have failed to plead (much less establish) an actionable as-applied constitutional violation. Doc. 216 at 13-14.

Even if this Court were to generously entertain this claim based on a theory of First Amendment retaliation (which, once again, was not even pleaded in the Complaint), summary judgment is proper in favor of Defendants. To establish a case of First Amendment retaliation, Plaintiffs must establish: (1) their speech was constitutionally protected; (2) they suffered a deprivation likely to deter free speech; and (3) their speech was a factor motivating the deprivation. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). Plaintiffs absolutely fail to demonstrate any of these three elements. Even assuming Plaintiffs were somehow able to establish these elements, the burden then shifts to Defendants to show that retaliation was not a but-for cause of the alleged adverse action. *Id.* at 717. When Defendants satisfy that burden, the burden shifts back to Plaintiffs to prove that Defendants' explanation was pretext. *Id.*

In this case, Plaintiff Beverly lost two days of pay as a sanction issued by then-CSU President, Defendant Watson, as a result of a student complaint against Beverly. SMF ¶64.

---

[8] To the extent Plaintiffs contend Defendant Cage issued the cease-and-desist letter in retaliation for their expressive activities, Plaintiffs must prove Cage's letter was intentionally sent in retaliation. "To establish a causal link between the protected expression and a subsequent action…, the plaintiff must show that the protected conduct was a substantial or motivating factor." *Massey v. Johnson,* 457 F.3d 711, 717 (7th Cir. 2006)). Plaintiffs have failed to do so, and have provided only speculation to support their retaliation claim. In fact, Defendant Bionaz testified he has no idea why Cage sent the letter. SMF ¶63.

14

Evidence supports the sanction was not in retaliation or related to Beverly's speech, but a disciplinary action based on the findings from an independent investigation. SMF ¶59. Former CSU Dean David Kanis recommended a sanction after his investigation concluded Beverly had violated CSU regulations when individual student dissenting opinions were ridiculed and students were maligned by other students and faculty during Professor Beverly's class. SMF ¶59. Based on Dean Kanis' investigation, the CSU Provost, Angela Henderson, then recommended to Defendant Watson that Professor Beverly be sanctioned. SMF ¶61. As confirmed by Dean Kanis, Provost Henderson and Defendant Watson, Beverly's sanction was related solely to the students' complaints and was unrelated to any other conduct or speech by Beverly. SMF ¶¶59; 61. To succeed on a First Amendment retaliation claim, Plaintiffs must prove that Defendant Watson intentionally retaliated against Beverly.[9]  Plaintiffs have no such evidence. [10]

For these reasons, the Court should grant summary judgment for Defendants on Count III.

## III. ALL COUNTS (I-IV) AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITY ARE ALSO BARRED BY SOVEREIGN IMMUNITY UNDER THE ELEVENTH AMENDMENT.

The Eleventh Amendment "acts as a jurisdictional bar to suit against a state in federal court." *Cannon v. Univ. of Health Scis./The Chicago Med. Sch.*, 710 F.2d 351, 356 (7th Cir.

---

[9] *See Massey,* 457 F.3d at 716. Plaintiffs fail to meet *any* prong of the retaliation analysis—not the least of which is their inability to articulate any action constituting intentional retaliation by Defendant Watson. Moreover, Plaintiffs fail to show "that the protected activity and the adverse action were not wholly unrelated" *Sauzek v. Exxon Coal USA, Inc.,* 202 F.3d 913, 918 (7th Cir. 2000). Here, the action taken against Plaintiff Beverly was wholly unrelated to his speech rights.

[10] It is worth mention that, in addition to the "retaliation" type claim addressed above, Plaintiffs—in an effort to salvage their weak case—continually attempt to add "retaliation" type claims in either submissions to this Court or through their deposition testimony. "[I]t is axiomatic that a party cannot raise new claims outside the complaint." *Chiang v. Lappin*, No. CIV. A. RDB-07-1017, 2008 WL 2945434, at *10 (D. Md. July 24, 2008). "A plaintiff may not amend [her] complaint through arguments in [her] brief in opposition to a motion for summary judgment." *Shanahan v. City of Chicago,* 82 F.3d 776, 781 (7th Cir.1996) (holding that plaintiff's "attempt to amend his complaint by way of a footnote in his response to defendants' motion for summary judgment was properly denied by the district court").

1983). Because a state university is a state agency under Illinois law, CSU itself is immune from suit, and this Court properly dismissed the University's Board of Trustees from the case. *See* Doc 21. Sovereign immunity also protects the remaining individual Defendants from claims against them in *their* official capacities and such damage claims should be rejected as a matter of law, and because there is no evidence of any ongoing violation by any individual Defendant acting on behalf of CSU. For these reasons, Plaintiffs' claims for injunctive relief must be rejected as well.

**A.  Sovereign immunity bars all damage claims against Defendants in their official capacity.**

"Because an official-capacity suit is effectively one against the institution, the official-capacity defendants share the University's imperviousness to damages." *Feldman v. Bahn*, 12 F.3d 730, 732 (7th Cir. 1993) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Lassiter v. Alabama A & M University*, 3 F.3d 1482, 1484–85 (11th Cir.1993)). "The Eleventh Amendment is applicable even though [Plaintiffs have] attempted to name individual representatives of the universit[y]…as defendants."  *Cannon*, 710 F.2d at 357.  Allowing damages claims against the remaining individual defendants, in their official capacity, would be improper.[11]

**B.  Because Plaintiffs fail to provide any evidence of an ongoing violation of their constitutional rights, sovereign immunity also bars Plaintiffs' claims for prospective injunctive and declaratory relief.**

Although *Ex parte Young*, 209 U.S. 123 (1908) allows private parties to sue state officials in their official capacity to enforce federal laws and regulations, they may do so only for prospective injunctive and declaratory relief. *See, e.g.*, *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 268 (2011) ("We have, for example, held that the fiction of *Ex parte Young* does not extend to suits where the plaintiff seeks retroactive relief…"); *Edelman v.*

---

[11] Only Count III appears to assert a damages claim against Defendants in their official capacity.

*Jordan*, 415 U.S. 651 (1974) (barring the award of retroactive benefits and noting that the relief awarded in *Ex parte Young* was prospective only). The Supreme Court has explicitly "focused on ensuring that *Ex Parte Young*'s narrow exception is 'narrowly construed.'" *Stewart*, 563 U.S. at 268. In order to maintain a suit, there must be an ***ongoing*** violation of federal law to support prospective relief. In short, "federal courts may grant relief prospectively, that is, against *ongoing and future violations* of federal law, but not retroactively, that is, against past violations . . . ." *Green v. Mansour*, 474 U.S. 64, 77 (1985). That is not the case here.

Plaintiffs have failed to provide any evidence that a violation has occurred, *see supra* Section I, let alone that a violation is ongoing or likely to occur in the future. SMF ¶¶ 18-21; 26-30; 33; 58. *See also* Doc. 216 at 6-8 (articulating Plaintiffs' failure to provide this Court with any cognizable injury or imminent threat of injury). The most recent action taken by Defendant Cage with respect to Plaintiffs was the cease-and-desist letter correspondence, which was over three years ago. And, there is no indication that he has taken any action on behalf of CSU against Plaintiffs since that time. Moreover, Defendants Watson and Carter are no longer even affiliated with the University. Thus, they cannot take action on behalf of CSU against Plaintiffs and therefore cannot be involved in any ongoing violation of law. Indeed, the claims for injunctive relief against Watson and Carter are moot.[12]

Accordingly, the Court should award judgment as a matter of law in favor of Defendants because Plaintiffs' claims seeking injunctive and declaratory relief as set forth in Counts I-IV are barred by the sovereign immunity afforded under the Eleventh Amendment.[13]

---

[12] Notably, Plaintiffs also fail to show that those currently acting in the official positions formerly held by Watson and Carter are violating their rights in any way.

[13] Of note, not only are Plaintiffs barred from injunctive relief against Defendants in their official capacity, any claims for injunctive relief in their individual capacity are not actionable. *See, e.g.,* *Ameritech Corp. v. McCann*, 297 F.3d 582, 586 (7th Cir. 2002). As such, Counts I, II and IV (seeking

## IV.     QUALIFIED IMMUNITY PRECLUDES PLAINTIFFS' CLAIMS

Even if Plaintiffs' claims were not rejected because of their inability to establish the essential elements of a constitutional violation, *see supra* Section II, or barred by sovereign immunity, *see supra* Section III, Defendants' actions are nonetheless protected by the doctrine of qualified immunity.

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court "refashioned the qualified immunity doctrine in such a way as to 'permit the resolution of many insubstantial claims on summary judgment' and to avoid 'subject[ing] government officials either to the costs of trial or to the burdens of broad-reaching discovery' in cases where the legal norms the officials are alleged to have violated were not clearly established at the time." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)(quoting *Harlow*, 457 U.S. at 817–818). "Generally, qualified immunity protects government agents from liability when their actions do not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 914 (7th Cir. 2011)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The test is objective: the Court considers "as a practical matter whether a reasonable official would have understood that his actions were unlawful at the time he acted." *Thomas v. Ramos,* 130 F.3d 754, 763 (7th Cir. 1997).

### A.     No clearly established right is at issue.

A "government official's conduct violates clearly established law *only when*, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731 at 741 (2011)  (quoting *Anderson v. Creighton*, 483 U.S. 635, 640

---

injunctive relief in Defendants' official capacity) and Count III (seeking injunctive relief against Defendants in individual and official capacity)—are effectively disposed of by sovereign immunity.

(1987) (emphasis added); *see also Volkman v. Ryker*, 736 F.3d 1084, 1092 (7th Cir. 2013) (noting that plaintiff had "not provided sufficient authority for [the court to] set aside the defendants' qualified immunity."). "The plaintiff bears the burden of showing that the constitutional right allegedly violated was clearly established before the defendant acted or failed to act." *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993) (citations and quotation marks omitted). Here, Plaintiffs cannot meet their burden.

Plaintiffs' central claim is that their First Amendment rights were violated by the Challenged Policies, which, according to Plaintiffs, were aimed at their blog. There is no dispute that this blog constitutes off-campus speech. SMF ¶15. Even if Defendants had sought to apply the Cyberbullying Policy or the Computer Usage policy to the blog—which they clearly have not—such application would not constitute the violation of a *clearly established right*.

For example, approximately one month ago, the District of Kansas held that a university employee was entitled to immunity in an off-campus speech case because there was no clearly established right and "the law in this area is constantly developing." *Yeasin v. Durham*, No. 2:16-CV-02010-JAR, 2016 WL 7014027, at *5 (D. Kan. Dec. 1, 2016); *see also Hosty v. Carter*, 412 F.3d 731, 739 (7th Cir. 2005)) ("Many aspects of the law with respect to students' speech . . . are difficult to understand and apply."). The court included a survey of the varied approaches of circuit courts around the country, illustrating the varied views nationwide. *See, e.g.*, *Yeasin*, 2016 WL 7014027 at *4-*6; *Keefe v. Adams*, 840 F.3d 523 at 529-534 (8th Cir. 2016) (concluding college's removal of student from school based on off-campus statements on his social media page did not violate student's First Amendment free speech rights); *Jackson v. Ladner*, 626 Fed. Appx. 80, 88 (5th Cir. 2015) (concluding that school officials were entitled to qualified immunity from a claim of a First Amendment violation as such rights were not clearly

19

established); *Yoder v. Univ. of Louisville*, 526 Fed.App'x. 537, 545–47 (6th Cir. 2013) (finding that university was entitled to qualified immunity from liability based on alleged First Amendment violation relating to off-campus, social media speech because any such right was not clearly established); *Doninger v. Niehoff*, 642 F.3d 334, 347 (2d Cir. 2011) (holding that it is not "clearly established that off-campus speech-related conduct may never be the basis for discipline by school officials").

Significantly, the Seventh Circuit has not yet addressed the First Amendment's application to off-campus or online speech or the impact of computer usage or cyberbullying on speech at public universities. In fact, the little precedent that exists within the Seventh Circuit precedent cuts *against* Plaintiffs' arguments. *See, e.g., Brown v. Chicago Bd. of Educ.*, 973 F. Supp. 2d 870, 880 (N.D. Ill. 2013) ("not only is there a question on whether *Garcetti* has eliminated First Amendment claims premised on teacher-speech rights, the Seventh Circuit cases discussed earlier could reasonably be interpreted to give [a school official] the authority to discipline [the plaintiff, a teacher].").  In order to be "clearly established," a right must be specific to the relevant factual context of a cited case and not generalized with respect to the Amendment that is the basis of the claim. *Brosseau v. Haugen*, 543 U.S. 194, 198–99 (2004).

Therefore, the Challenged Policies cannot be said to affect a "clearly established" right.

**B.  Defendants were performing discretionary functions that are protected by qualified immunity; no reasonable person would consider the exercise of these functions as an obvious constitutional violation.**

Even if this Court were to find that Plaintiffs' specific rights are clearly established, the Defendants were performing functions that protect them under qualified immunity. The defense of qualified immunity "is available only to state officials who occupy positions with discretionary or policymaking authority," and protects them "when they are acting in their official capacity." *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000)(citing *Harlow*, 457 U.S.

20

at 816). Discretionary functions require officials, within the scope of their employment, to exercise "reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or a course pursued." *See* 63C Am. Jur. 2d Public Officers and Employees § 318. Unless the alleged constitutional violation is "so obvious that a reasonable state actor would know what they are doing violates the Constitution," the actions fall firmly under the protection of qualified immunity. *Siebert v. Severino,* 256 F.3d 648, 654–55 (7th Cir.2001) (citation omitted). In short, the doctrine of qualified immunity shields public officials "who act in ways they reasonably believe to be lawful." *Anderson v. Creighton,* 483 U.S. 635, 641 (1987). Such is the case for each Defendant here.

### 1. Defendant Carter

The only allegations seemingly related to Defendant Carter concern her investigation of a harassment complaint made by then-CSU Director of Public Relations, Tom Wogan, against Plaintiff Bionaz under the Cyberbullying Policy. SMF ¶36. Although Defendant Carter found that Plaintiff Bionaz did <u>not</u> violate the University's policy, Plaintiff Bionaz objects to what he calls her "qualified finding of his innocen[ce]." SMF ¶38, Specifically, Bionaz objects that the letter he received from Carter—informing him that he had <u>not</u> violated the policy—also contained references to his inflammatory and unprofessional behavior and mentioned that continued behavior of this nature might violate the policy. SMF ¶¶ 39-40.

Defendant Carter, however, reasonably believed that it was her duty to investigate Tom Wogan's complaint. SMF ¶¶37. She also reasonably believed that warning Plaintiff Bionaz that persistent or pervasive harassing conduct might violate the policy, SMF ¶41; this action did not violate his First Amendment rights. As such, Defendant Carter acted squarely within the protections provided by qualified immunity. Namely, she was performing discretionary functions, using her professional judgment in conducting an investigation and writing a related

letter.  The ability to and the manner in which an investigation is conducted falls squarely within the bounds of conduct protected by qualified immunity. *See, e.g., Kompare v. Stein*, 801 F.2d 883, 887 (7th Cir. 1986), (noting qualified immunity applies to government officials conducting investigations as part of their job duties);  *Salau v. Denton,* 139 F. Supp. 3d 989, 1003 (W.D. Mo. 2015), appeal dismissed (Dec. 11, 2015)(holding that state university officials were entitled to qualified immunity based on decision to expel student based on disciplinary finding).

 To overcome qualified immunity, Plaintiffs would need to show that Defendant Carter knew she was violating the Constitution when she wrote the letter to Plaintiff Bionaz finding that he had <u>not</u> violated the policy. But, by Plaintiff Bionaz's own admission he has no such evidence.  Plaintiff Bionaz has no idea why Defendant Carter wrote the letter as she did.

> Q. So assume for a second that Ms. Carter did privilege the complainant's view of what had transpired between you. Do you have any indication of why she did that? …
> A. I have no idea what she was thinking. I don't know.
> Q. And so you have no evidence of why she did that?
> **A. No, sir.**

Tab "A" – Bionaz Dep. Tr. at 69: 2-14.

### 2.    Defendant Cage

Plaintiffs' principal complaint about Defendant Cage relates to his issuance of a cease-and-desist trademark demand letter in 2013.  SMF ¶44.  Qualified immunity protects Cage against this charge because he was a government employee, engaging in exactly the type of discretionary function the doctrine protects.

In November 2013, Defendant Cage, as General Counsel, sent a cease-and-desist letter to Plaintiff Beverly related to the *CSU Faculty Voice* blog. SMF ¶45. The letter advised Beverly that the blog included the "unauthorized use of the CSU names and marks" and that such use falsely denoted the blog's association with CSU. SMF ¶47.  The letter to Plaintiffs was a small

part of a CSU effort to update and enforce the University's protected marks as CSU joined the Western Athletic Conference. SMF ¶45. Prior to sending the letter, Defendant Cage evaluated the blog. SMF ¶46. As General Counsel, responsible for legal claims related to the University's intellectual property, Defendant Cage used his judgment in assessing the blog and determined that to protect the University's trade names and marks, a letter should be issued.[14] SMF ¶¶45-47. This exercise of his judgment is protected by qualified immunity. *See, e.g., Anderson,* 483 U.S. at 638–39 (shielding officials from liability when they reasonably could have believed their actions were supported by the facts and consistent with the rights they are alleged to have violated.").

In addition, Plaintiffs present no evidence supporting their claims that Defendant Cage's actions related to the cease-and-desist were for any purpose other than to protect the University's intellectual property rights. In fact, far from impairing Plaintiffs' speech, Plaintiffs' blog has continuously operated without interruption. SMF ¶55. Plaintiffs have failed to provide any evidence of retaliation, censorship, or harm committed by Defendant Cage and their claim must therefore fail. *See, e.g., Massey,* 457 F.3d at 716; *see also Sauzek.,* 202 F.3d at 918.

### 3.     Defendant Watson

The Complaint alleges that Defendant Watson issued a sanction against Plaintiff Beverly in retaliation for his expressive activities. SMF ¶59. As outlined in the declarations of former CSU Dean, David Kanis, and former CSU student, Dennis Johnson, Plaintiff Beverly was sanctioned based on how Johnson and another student were treated during Beverly's political science class. SMF ¶59. Plaintiff Beverly moved his political science class to a "Repression at CSU" event, where students were subjected to inappropriate treatment. SMF ¶¶59-60. As a

---

[14] In addition to conducting his own evaluation, Defendant Cage engaged outside legal counsel to evaluate the blog's marks. SMF ¶48.

result, Plaintiff Beverly was sanctioned following an independent investigation by Dean Kanis and based on the recommendation made by CSU Provost Henderson to then-President, Defendant Watson. SMF ¶¶61, 64.

The actions taken by Defendant Watson related to the sanction fall squarely within qualified immunity protections. In accordance with the CSU Faculty Union contract, Defendant Watson, as the then-President of the University, was required to make a decision as to whether to adopt the sanction recommendation concerning Beverly, a tenured professor. SMF ¶¶62-63. As such, Defendant Watson or his designee was required to make a decision regarding whether to issue a sanction. *Id.* Even Plaintiff Beverly admits the CSU Faculty Union contract governs how sanctions are imposed. SMF ¶62. Accordingly, after reviewing the recommendation of Provost Henderson, Defendant Watson using his judgment decided to sanction Beverly thereby adopting the position taken by Provost Henderson. SMF ¶64.

Once again, a government official – in this instance Watson – who uses his discretionary authority as part of his official duties is protected from personal liability. *See, e.g., Tonkovich,* 159 F.3d at 526-27; *Salau,* 139 F. Supp. 3d at 1003 (holding that state university officials were entitled to qualified immunity from liability based on decision to expel student based on disciplinary proceeding finding).

C. **Qualified immunity protects Defendants from personal liability as their actions were reasonable and are not close to rising to the level of being "plainly incompetent."**

In conclusion, "[q]ualified immunity typically casts a wide net to protect government officials from damage liability whenever balancing is required." *Feldman v. Bahn*, 12 F.3d 730, 733 (7th Cir. 1993) (citing *Benson v. Allphin*, 786 F.2d 268, 276 (7th Cir.1986)). Accordingly, the Supreme Court notes that those officials "should not be held personally liable." *Anderson,* 483 U.S. at 641. The doctrine of qualified immunity focuses on "the objective reasonableness of

24

an official's conduct, as measured by reference to clearly established law" to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Notably, the qualified immunity doctrine "provides 'ample room for mistaken judgments' and protects all those but the 'plainly incompetent,'" *Purvis v. Oest*, 614 F.3d 713, 720 (7th Cir. 2010) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Even if this Court finds that Defendants' actions were mistaken, it is clear that Defendants' actions in this case were far from incompetent. Rather, their actions were reasonable and appropriate considering their job functions and the facts presented. In addition, to the extent Defendants were required to make decisions concerning uncharted areas of the law related to online and off-campus speech, the law is clear that "[p]ublic officials need not predict, at their financial peril, how constitutional uncertainties will be resolved." *Hosty v. Carter*, 412 F.3d 731, 739 (7th Cir. 2005).

Therefore, qualified immunity protects all three Defendants from personal liability.

## CONCLUSION

For all of the foregoing reasons, Defendants' Motion for Summary Judgment should be granted.

Dated: January 13, 2017              Respectfully Submitted,

HUSCH BLACKWELL, LLP

By: /s/Lisa J. Parker

      Donald J. Mizerk
      John W. Borkowski
      Lisa J. Parker
      Michael T. Raupp
      120 South Riverside Plaza, Suite 2200
      Chicago, IL 60606
      (312) 655-1500
      (312) 655-1501 (Facsimile)
      Attorneys for Defendants

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** was served upon all counsel of record on this 13th day of January 2017 via use of the Court's ECF system.


/s/ Lisa J. Parker


Robert Corn-Revere
Ronald G. London
Lisa B. Zycherman
Davis Wright Tremaine LLP
1919 Pennsylvania Ave NW, Suite 800
Washington, D.C. 20006-3401
bobcornrevere@dwt.com
ronnielondon@dwt.com
lisazycherman@dwt.com

Jessica Tovrov
Wesley Johnson
Goodman Tovrov Hardy & John
105 West Madison Street, Suite 1500
Chicago, IL 60602
jessica@tovrovlaw.com
wjohnson@goodtov.com