**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| PHILLIP BEVERLY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:14-CV-04970 |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| WAYNE D. WATSON, et al., | ) | Magistrate Judge Sheila Finnegan |
| | ) | |
| Defendants. | ) | |

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, pursuant to Fed. R. Civ. P. 56(c) and LR56.1(a)(3), hereby submit their Statement of Undisputed Material Facts in support of Defendants' Motion for Summary Judgment.

**The Parties**

1.  More than two years ago, on July 1, 2014, Plaintiffs Phillip Beverly and Robert Bionaz, professors at Chicago State University ("CSU" or the "University"), filed this lawsuit alleging violations of the First Amendment. *See generally* Complaint. Plaintiffs are CSU faculty members and founders and frequent contributors to an independent blog entitled *CSU Faculty Voice* that is critical of the CSU administration. Compl. ¶ 2.

2.  Plaintiff Bionaz is a tenured, associate professor of history at CSU. Tab "A" – Deposition transcript of Robert Bionaz 14:3-8; 15:3-5. He has worked at CSU for more than 15 years, and is the President of the CSU Faculty Union and a member of the Faculty Senate. Tab "A" – Bionaz Dep. Tr. at 15:13-23.

3.  Plaintiff Phillip Beverly is a tenured, associate professor of political science at CSU. He has worked at CSU since the fall of 1991 (approximately 25 years). He is the past

President of the CSU Faculty Senate. Tab "B" – Deposition transcript of Phillip Beverly 22:3-10; 100:14-16. *See also* Statements of Plaintiffs in Support of Motion for Partial Summary Judgment (Doc. 165 ¶ 1).

4. Defendant Wayne Watson is the former President of CSU. Ans. ¶ 14. According to CSU's bylaws, the President is the chief executive officer of the University and reports to the CSU Board of Trustees. *See* Tab "C" – CSU Bylaws at Article VII. The President is responsible for the "organization, management, direction, and general supervision of the University and … [its] effective administration and management …." *Id.* Watson described his CSU President role as executing the "mission and vision of the university; to govern the academic, financial and operational components of the university; to look out for the overall health of the university both in terms of resources and students; and to engage the community." Tab "D" – Deposition transcript of Wayne Watson at 15:17-24.

5. Defendant Watson retired from his position as CSU President in December 2015. *See* Tab "E" – CSU Board of Trustees, Full Board Meeting Minutes at 7-8 (Dec. 10, 2015). President Watson was succeeded as President of CSU by Thomas Calhoun. Doc 165 ¶ 3. Thomas Calhoun separated from CSU in September 2016, at which time the CSU Board of Trustees named CSU's Interim Vice President of Administration and Finance, Cecil Lucy, as the Interim President. *See* Tab "F" – CSU Board of Trustees, Full Board Meeting Agenda (Sept. 16, 2016); CSU Board of Trustees, Full Board Meeting Minutes at 1-2; 9 (Sept. 16, 2016).

6. Defendant Janelle Carter is a former Associate General Counsel and Equal Employment Opportunity ("EEO") coordinator at CSU. Tab "G" – Deposition transcript of Janelle Carter 13:20-22; 53:18. In her role as Associate General Counsel, Ms. Carter, an

attorney, was responsible for providing legal advice and counsel to various stakeholders on behalf of the University; representing the University before a number of administrative agencies; conducting investigations, including EEO investigations; and overseeing some disciplinary matters. Tab "G" – Carter Dep. Tr. at 16:10-22.

7. Defendant Carter's employment at the University ended on April 30, 2016. Defendants' Response to Plaintiffs' Statement of Undisputed Material Facts (Doc. 190) ¶ 5.

8. Defendant Patrick Cage is the Vice President of Labor and Legal Affairs and the General Counsel at CSU. Ans. ¶ 15. As General Counsel, he is responsible for management of all legal issues and claims related to the University. Tab "H" – Deposition transcript of Patrick Cage 13:3-8. In this capacity, Defendant Cage also oversaw the management of Freedom of Information Act requests. Tab "H" – Cage Dep. Tr. at 218:2-19.

9. The CSU Board of Trustees also was a Defendant to this lawsuit (*see* Compl. ¶ 13), but all claims against the Board were dismissed on September 12, 2014 on sovereign immunity grounds. Minute Entry Granting Motion to Dismiss CSU Board of Trustees, Sept. 12, 2014 (Doc. 21).

10. Defendants Watson, Carter, and Cage remain individual Defendants in this lawsuit and are sued in their official and personal capacities. Compl. ¶¶ 14-16.

### Plaintiffs' Complaint Counts

11. In Counts I and II of Plaintiffs' Complaint, Plaintiffs assert that the University's Computer Usage and Cyberbullying policies (the "Challenged Policies") are unconstitutional on their face. Compl. ¶¶63-85. Plaintiffs seek injunctive relief related to these counts. *Id.*

12. Plaintiffs style Count III of their Complaint as an "As-Applied Violation of Plaintiffs' Right to Free Speech," asserting that Defendants violated their right to free speech through their application of the Challenged Policies. Compl. ¶¶90-91. Count III also asserts that Defendants took certain other actions against Plaintiffs either to deter or in retaliation for Plaintiffs' expressive activities. Compl. ¶¶89, 92. Count III seeks injunctive relief and monetary damages. Compl. ¶95. However, when asked to identify the monetary damages he is seeking as a result of Defendants' action, Plaintiff Beverly responded: "I haven't even thought that far yet" and "I don't know." Tab "B" – Beverly Dep. Tr. at 186:8-20.

13. In Count IV, Defendants seek a declaratory judgment and injunction based on Counts I-III. Compl. ¶¶ 96-100.

## Plaintiffs' Challenges to CSU Policies

14. As mentioned, Plaintiffs challenge the constitutionality of two CSU policies: the CSU Computer Usage Policy (Tab "I") and the CSU Cyberbullying Policy (Tab "J"). According to Plaintiff Beverly, Plaintiffs filed suit related to the Challenged Policies because they "felt [the policies] were just not on." Tab "B" – Beverly Dep Tr. at 31:24-32:7.

15. The Computer Usage Policy, as confirmed through the declaration of CSU Chief Information Officer, Prashant Shinde, regulates only technology assets owned and operated by CSU. *See* Tab "K" – Declaration of Prashant Shinde in Support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction at ¶ 3. Further, Mr. Shinde confirmed the policy does not apply to *CSU Faculty Voice* blog activities that have no connection to CSU technology assets. *Id.* at ¶ 4.

16. The scope of the Computer Usage Policy was further confirmed by the following deponents: former CSU Chief Ethics Officer, Hon. Bernetta Bush, testified the policy "prevents people from utilizing *CSU's computers* for anything other than university business. (Tab "L" – Deposition Transcript of Hon. Bernetta Bush 66:6-7) (emphasis added); CSU General Counsel, Defendant Patrick Cage, testified that the policy only applies to information on the University's servers (Tab "H" – Cage Dep. Tr. at 77:15-78:5); and Renee Mitchell, CSU Associate Vice President of Human Resources, testified the policy only regulates activity related to CSU-owned or operated technology assets (Tab "M" – Deposition Transcript of Renee Mitchell Dep. 114:13-115:13 and Tab "N" – Declaration of Renee Mitchell in Support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction at ¶ 3, 8).

17. The only punishment that is even possible under the policy itself is the "suspen[sion] [of] some or all privileges associated with [University] computer use."   Tab "I" – CSU Computer Usage Policy at 3, Implementation ¶ B.

18. No investigations or disciplinary action has occurred under the Computer Usage Policy against any CSU employee—including Plaintiffs. Tab "M" – Mitchell Dep. Tr. at 118:6-19; Tab "N" – Mitchell Decl. at ¶¶ 5-7.

19. Plaintiff Bionaz testified that the Computer Usage Policy has never been enforced with respect to the *CSU Faculty Voice* blog. Tab "A" – Bionaz Dep. Tr. at 78:16-19.

20. Specifically, Plaintiff Bionaz testified that no enforcement action was ever taken against content posted on the *CSU Faculty Voice* by the CSU administration using the Computer Usage Policy. Tab "A" – Bionaz Dep. Tr. at 80:1-4.

21. Plaintiff Beverly testified that the Computer Usage Policy was never enforced against him. Tab "B" – Beverly Dep. Tr. at 235:13-15.

22. As set forth in the CSU Cyberbullying Policy "Rationale," the purpose of the policy is "to prevent and redress harassment within the CSU community…" Tab "J" – CSU Cyberbullying Policy at 1. The policy contains an entire paragraph dedicated to acknowledging CSU's commitment to principles of free speech, even when University community members may find the speech "abhorrent." Tab "J" – CSU Cyberbullying Policy at 1, ¶ 4.

23. The CSU Cyberbullying Policy expressly limits its application to off-campus speech *only* when it is "intended by the speaker to reach the CSU campus *and, does, in fact, reach the CSU campus*." Tab "J" – Cyberbullying Policy at 5, "Expressive conduct" definition.

24. The CSU Cyberbullying Policy "specifically addresses the obligations of the institution under the following laws and regulations," and then lists eight applicable federal and state statutory obligations to which the policy is limited. Tab "J" – Cyberbullying Policy at 2.

25. The CSU Cyberbullying Policy details what conduct is considered "harassment" by listing seven specific categories and examples of conduct that are prohibited as harassment. Tab "J" – Cyberbullying Policy at 4-5.

26. There has been no disciplinary action under the Cyberbullying Policy against any member of the CSU community—including Plaintiffs. Tab "M" – Mitchell Dep. Tr. at 81:6-9.

27. Plaintiff Bionaz testified that the Cyberbullying Policy has never been applied to Plaintiffs' blog. Tab "A" – Bionaz Dep. Tr. at 89:21-23.

28. Plaintiff Bionaz also testified he has never been disciplined under the Cyberbullying Policy for anything he posted on the blog, nor is he aware of anyone who has been disciplined for anything posted on the blog. Tab "A" – Bionaz Dep. Tr. at 89:24-90:11.

29. Like Plaintiff Bionaz, Plaintiff Beverly testified that the Cyberbullying Policy was never enforced against him. Tab "B" – Beverly Dep. Tr. at 235:10-12.

30. Plaintiff Bionaz also testified that the Cyberbullying Policy has not impacted his expression or blog posts on the *CSU Faculty Voice*. Tab "A" – Bionaz Dep. Tr. at 148:21-149:4.

31. Overall, readership of Plaintiffs' blog, the *CSU Faculty Voice*, has increased dramatically. When started in 2009, the blog was "lucky to get 30 hits a day." Tab "A" – Bionaz Dep. Tr. at 28:1-9; *see also* 182:21-24. The blog now gets an average of 700 "hits" per day—20,000 a month. Tab "A" – Bionaz Dep. Tr. at 180:21-24. The blog recently reached a million views. *See* Robert Bionaz, *Welcome to 2017*, CSU FACULTY VOICE (Jan. 9, 2017, 4:02 AM), http://csufacultyvoice.blogspot.com/2017/01/welcome-to-2017_9.html. According to Plaintiff Beverly, a post related to a cease-and-desist letter authored by Defendant Patrick Cage related to the blog received the all-time highest number of views. Tab "B" – Beverly Dep. Tr. at 47:18-24.

32. Also, since the filing of this lawsuit and with the Challenged Policies in effect, Plaintiffs have continued to post blog articles critical of the CSU administration. *See, e.g.* Phillip Beverly, *And I Was Thinking We Were Headed to Double Secret Financial Exigency*, CSU FACULTY VOICE (Dec. 9, 2016, 12:00 PM), http://csufacultyvoice.blogspot.com/2016/12/and-i-was-thinking-we-were-headed-to.html; Robert Bionaz, *Still in the Grip of Wayne Watson and His Crony Army*, CSU FACULTY VOICE (Jan. 9, 2017, 2:39 PM), http://csufacultyvoice.blogspot.com/2017/01/still-in-grip-of-wayne-watson-and-his.html. In fact, the number of blog posts authored by Plaintiffs increased – at times significantly – since this lawsuit was filed. Tab "O" – Defendants' Disclosure of Expert Testimony and Expert Report of Michal A. Malkiewicz, at p. 5, ¶ 6; p. 18, ¶ 23.

33. According to Plaintiff Bionaz, "as far as [he] can tell" the policies have never been enforced against the blog. Tab "A" – Bionaz Dep. Tr. at 78:16-19; *see also* 90:21-23. And, the blog always continued operating without interruption. Tab "A" – Bionaz Dep. Tr. at 178:20-179:4.

**Plaintiffs' "As-Applied" Challenges**

34. Plaintiffs' Complaint asserts three "as-applied" challenges related to the following: (1) a 2014 investigation by Defendant Carter of a harassment complaint filed by Tom Wogan, the former CSU Director of Public Relations, against Plaintiff Bionaz (Compl. ¶ 43); (2) a 2013 cease-and-desist letter related to the *CSU Faculty Voice* blog sent by Defendant Patrick Cage (Tab "A" – Bionaz Dep. Tr. at 67:1-14; *see also* Tab "B" – Beverly Dep. Tr. at 167:8-169:6); and (3) a 2014 disciplinary sanction issued by Defendant Watson against Plaintiff Beverly Compl. ¶¶ 37-39; *see also* Tab "B" – Beverly Dep. Tr. at 119:13-24.

**Plaintiffs' Claims Related to Defendant Carter**

35. With respect to Defendant Carter, Plaintiff Beverly testified that Defendant Carter did not directly violate his First Amendment rights. Tab "B" – Beverly Dep. Tr. at 166:22-24; 167:4-5.

36. Plaintiff Bionaz testified the only allegations related to Defendant Carter concern her investigation of a May 2014 harassment complaint made by former CSU Director of Public Relations, Tom Wogan, against him. Tab "A" – Bionaz Dep. Tr. at 64:16-65:8.

37. Defendant Carter testified that because CSU's Cyberbullying Policy covers all forms of harassment, her investigation of Tom Wogan's complaint against Plaintiff Bionaz was conducted pursuant to the requirements of the Cyberbullying Policy. Tab "G" – Carter

Dep. Tr. at 53:1-18; 90:13-17; 121:22-122:11. The Cyberbullying Policy requires the University EEO Officer to investigate harassment complaints. Tab "J" – Cyberbullying Policy at 7-8. Additionally, General Counsel Cage, assigned her to investigate the harassment complaint. Tab "G" – Carter Dep. Tr. at 53:2-18.

38. Subsequently, on September 22, 2014, Defendant Carter notified Plaintiff Bionaz by letter that her investigation determined he had not violated the Cyberbullying Policy. Tab "G" – Carter Dep. Tr. at 111:14-20; 124:7-16; 122:24-5:16.

39. Plaintiff Bionaz acknowledged that Defendant Carter's investigation of the complaint against him was not retaliation in violation of his constitutional rights. Tab "A" – Bionaz Dep. Tr. at 65:12-14.

40. Rather, Plaintiff Bionaz testified that he objects to what he calls Defendant Carter's "qualified finding of his innocen[ce]" because it contained references to his inflammatory and unprofessional behavior and mentioned that continued behavior of this nature might violate the Cyberbullying Policy. Tab "A" – Bionaz Dep. Tr. at 65:4-8; 65:19-23.

41. However, Defendant Carter—using her judgment—thought it reasonable to put Plaintiff Bionaz on notice that persistent or pervasive harassing conduct *might* violate the Cyberbullying Policy. Tab "G" – Carter Dep. Tr. at 122:13-123:8; *see also* Tab "J" – Cyberbullying Policy at 5.

42. In the more than two years since Defendant Carter issued the letter, Plaintiff Bionaz has never been charged with violating the Cyberbullying Policy. Tab "A" – Bionaz Dep. Tr. at 89:24-90:5.

43. Additionally, Tom Wogan who filed the complaint, alleging he was harassed by Plaintiff Bionaz, no longer works at CSU.

9

**Plaintiffs' Claims Related to Defendant Cage**

44. With respect to the allegations against Defendant Cage, Plaintiffs allege that Defendant Cage violated their First Amendment rights by issuing a 2013 cease-and-desist letter to Plaintiffs. Tab "A" – Bionaz Dep. Tr. at 67:1-14; *see also* Tab "B" – Beverly Dep. Tr. at 167:8-169:10.

45. On November 11, 2013, Defendant Cage sent a cease-and-desist letter to Plaintiff Beverly to address the use of "CSU's trade names and marks [on the *CSU Faculty Voice* blog] without permission or license from the University to do so." Compl. at Ex. A. Defendant Cage testified this was done as part of CSU's effort to update and enforce their protected marks upon joining the Western Athletic Conference. Tab "H" – Cage Dep. Tr. at 105:6-106:15.

46. Defendant Cage testified that he evaluated Plaintiffs' blog for trademark concerns prior to sending the cease-and-desist letter. Based on his evaluation of the blog, Defendant Cage issued the cease-and-desist letter related to the blog's improper use of "CSU trade names and marks." Tab "H" – Cage Dep. Tr. at 112:4-114:11; Compl. at Ex. A.

47. Defendant Cage's cease-and-desist letter informed Plaintiffs that the *CSU Faculty Voice* blog included the "unauthorized use of the CSU names and marks" and explained that the use of the marks falsely denoted association with CSU and created confusion regarding whether the blogs' comments and views were endorsed by the University. *See* Compl. at Ex. A. As such, the blog's use of CSU tradenames and marks threatened to give blog readers the false impression that CSU operated a blog contrary to standards governing CSU-owned technology. Tab "H" – Cage Dep. Tr. at 55:2-57:4; *see also* 58:15-59:5.

48. In addition to his own evaluation, Defendant Cage hired outside legal counsel to evaluate the marks on the blog. Tab "H" – Cage Dep. Tr. at 114:12-115:6.

49. Plaintiff Bionaz testified that the trademark correspondence Plaintiffs received from the University's outside legal counsel included "a whole slew of suggestions as to what [Plaintiffs] should do to prevent [trademark] litigation." Tab "A" – Bionaz Dep. Tr. at 67:10-14.

50. Within approximately six days of Plaintiff Beverly receiving the November 2013 cease-and-desist letter, references to "Chicago State University" and related images in the *CSU Faculty Voice* blog masthead were either removed or altered to no longer expressly reference the University. Tab "B" – Beverly Dep. Tr. at 60:17-62:8; *see also* 63:12-64:17.

51. On November 27, 2013—after removing the references to "Chicago State University" and CSU-related images—Plaintiffs' counsel sent a letter to Defendant Cage, articulating Plaintiffs' position with respect to images on their blog. Compl. at Ex. C.

52. On January 3, 2014, CSU's outside counsel acknowledged the changes made to the blog and reserved the University's right to pursue future legal action if the blog improperly used University names and marks. Compl. at Ex. D.

53. This January 2014 letter explicitly stated, "it is not the University's intention to censor or inhibit the professors' speech." Compl. at Ex. D.

54. In the over three years following the issuance of Defendant Cage's cease-and-desist letter, there has been no action by the University, Defendant Cage or any University counsel related to the cease-and-desist. Tab "B" – Beverly Dep. Tr. at 168:20-169:1.

55. In the over three years following the issuance of Defendant Cage's cease-and-desist letter, the *CSU Faculty Voice* blog continuously operated without interruption. Tab "A" – Bionaz Dep. Tr. at 178:20-179:8.

56. Plaintiff Bionaz admitted he has no evidence regarding Defendant Cage's motivations in sending the cease-and-desist letter and does not know why Defendant Cage sent the letter. Tab "A" – Bionaz Dep. Tr. at 71:8-16.

57. Plaintiff Bionaz also admitted he has no evidence that Defendant Cage had any involvement in the creation of the Computer Usage or Cyberbullying policies. Tab "A" – Bionaz Dep. Tr. at 153:1-20.

58. Further, Plaintiff Bionaz testified Defendant Cage has not taken any action to enforce the Computer Usage Policy against any content posted on Plaintiffs' blog. Tab "A" – Bionaz Dep. Tr. at 78:16-19; *see also* 79:18-80:4.

### Plaintiffs' Claims Related to Defendant Watson

59. With respect to Defendant Watson, Plaintiffs appear to claim that Defendant Watson sanctioned Plaintiff Beverly in 2014 because of his expressive activities. However, according to former CSU Dean, David Kanis, Plaintiff Beverly was sanctioned because he moved his Political Science class to a "Repression at CSU" event (for which class attendance accounted for a portion of students' grades) and students were mistreated during the class. Tab "P" – Declaration of David Kanis, PhD, in Support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction at ¶¶ 1-6, 9. *See also* Tab "Q" – Declaration of Dennis Johnson in Support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction; Tab "R" – Deposition transcript of Angela Henderson at p. 152:11-17.

60. Plaintiff Beverly confirmed in his deposition testimony that he moved his class to the "Repression at CSU" event, and that attendance was not optional. Tab "B" – Beverly Dep. Tr. at 97:12-99:11.

61. Based on Dean Kanis' investigation, CSU Provost Angela Henderson recommended to then-CSU President, Defendant Watson, that Plaintiff Beverly be sanctioned. Tab "R" – Henderson Dep. Tr. at 150:13-152:2. Defendant Watson adopted the position taken by Provost Henderson. Tab "D" – Watson Dep. Tr. at 214:13-216: 20, 217:14-22; *see also* Tab "S" – Recommendation of Provost Henderson to Defendant Watson at 3; Tab "P" – Declaration of David Kanis at Ex. 2 (Defendant Watson's sanction letter to Plaintiff Beverly).

62. The CSU Faculty Union contract governs how sanctions are to be addressed and imposed as relates to faculty members. Tab "B" – Beverly Dep. Tr. at 123:17-124:4.

63. Under the union contract, the President of the University (or his designee), is the only person with authority to issue an official sanction against a tenured professor. Tab "T" – Contract 2010-2015, Chicago State University and UPI Local 4100, Units A, B and C at Article 5(c) and (h). Accordingly, only Defendant Watson, as the then-CSU President, or his designee, had authority to issue an official sanction against Plaintiff Beverly in response to the sanction recommendation concerning Plaintiff Beverly in response to a student complaint. *Id.*

64. Based on the recommendation of Provost Henderson, in June 2014 Defendant Watson issued a sanction against Plaintiff Beverly that resulted in the loss of two days' pay. Tab "B" – Beverly Dep. Tr. at 119:18-24; Tab "P" – Declaration of David Kanis at Ex. 2 (Defendant Watson's sanction letter to Plaintiff Beverly).

65. Plaintiff Bionaz testified that he cannot identify an action by Defendant Watson where Defendant Watson attempted to directly censor content on the blog. Tab "A" – Bionaz Dep. Tr. at 155:5-8.

66. Plaintiff Bionaz testified that Defendant Watson has never investigated or sanctioned Plaintiffs based on something posted on the *CSU Faculty Voice*. Tab "A" – Bionaz Dep. Tr. at 155: 18-21.

67. Plaintiff Bionaz was unable to testify to any occasion where Defendant Watson subjected him to disciplinary procedures based on Plaintiff Bionaz's expressive activities. Tab "A" – Bionaz Dep. Tr. at 156: 2-6.

68. Although Plaintiffs portray Defendant Watson as the "mastermind of the purported plot to chill their speech and shut down their blog," Order Overruling Pls.' Objections to U.S. Magistrate Judge Finnegan's Order Granting Defs.' Mot. to Compel, Aug. 3, 2016 (Doc. 185 at 4), Plaintiff Bionaz testified he has no knowledge of whether Watson had any involvement in CSU's development of the Computer Usage and Cyberbullying Policies. Tab "A" – Bionaz Dep. Tr. at 74:16-21.

69. Plaintiff Bionaz also testified he does not have any evidence of Watson's involvement in the creation and drafting of the two CSU Challenged Policies at issue. Tab "A" – Bionaz Dep. Tr. at 153:15-17; *see also* 154:6-8.

70. Plaintiff Beverly also testified he has no direct knowledge of Watson's involvement with the policies. Rather, Plaintiff Beverly believes that, by virtue of Watson's job as President and "chief executive" of the University, Defendant Watson "is responsible for anything that happens at the institution whether … [he is] actually involved in it or not." Tab "B" – Beverly Dep. Tr. at 172:17-19, 173:9-12.

71. The CSU Board of Trustees, not the CSU President, determines and adopts University policies.[1] Tab "U" – Deposition transcript of Anthony Young (CSU Board of Trustees Chairman) at p. 67:11-13.

Dated: January 13, 2017                    Respectfully Submitted,

                                           HUSCH BLACKWELL, LLP

                                           By: /s/Lisa J. Parker

                                                Donald J. Mizerk
                                                John W. Borkowski
                                                Lisa J. Parker
                                                Michael T. Raupp
                                                120 South Riverside Plaza, Suite 2200
                                                Chicago, IL 60606
                                                (312) 655-1500
                                                (312) 655-1501 (Facsimile)
                                                Attorneys for Defendants

---

[1] *See* http://www.csu.edu/boardoftrustee/documents/Governing_Policies.pdf  (Under Illinois law, the Board of Trustees of Chicago State University, "as the designated policy-making agency for the University shall have all of the powers and duties established by the Chicago State University Law, 110 ILCS § 660/5-1 et seq. as amended from time to time.")

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the foregoing **STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** was served upon all counsel of record on this 13th day of January 2017 via use of the Court's ECF system.


/s/ Lisa J. Parker


Robert Corn-Revere
Ronald G. London
Lisa B. Zycherman
Davis Wright Tremaine LLP
1919 Pennsylvania Ave NW, Suite 800
Washington, D.C. 20006-3401
bobcornrevere@dwt.com
ronnielondon@dwt.com
lisazycherman@dwt.com

Jessica Tovrov
Wesley Johnson
Goodman Tovrov Hardy & John
105 West Madison Street, Suite 1500
Chicago, IL 60602
jessica@tovrovlaw.com
wjohnson@goodtov.com